CASE OF SUPERVISORS OF ELECTION.

The St. of 1873, c. 376, § 1, directing the justices of this court to appoint supervisors of election, is unconstitutional and void.

PETITION under St. 1873, c. 376, § 1, for the appointment of supervisors of election. The petition was signed by five legal voters of Ward 3 in the city of Boston, and was in the following words:

" To the Honorable the Justices of the Supreme Judicial Court, holden at Boston, within and for the county of Suffolk.

" Respectfully represent the undersigned, being five legal voters of Ward Three in said city of Boston, that they desire to have the election of state and county officers, to be held in said ward on the fourth day of November next, guarded and scrutinized as provided in the 376th chapter of the acts of 1873, and they respectfully petition that supervisors of election may be appointed and commissioned in said ward, as provided in said act. And your petitioners will ever pray."

This petition was presented on October 24, 1873, to the chief justice, by whose order notice was published in the Boston Daily Advertiser. and Boston Post, to all persons interested in the matter thereof, or in a like petition in relation to any other ward, to appear before the Justices of the Supreme Judicial Court, at the court-house in Boston, on October 27, at two o'clock in the afternoon, that they might then and there show cause, if any they had, why the prayer of the petition should or should not be granted.

At the time appointed, the matter was argued by *L. M. Child*, for the petitioners, and by *P. A. Collins*, *contra*, before *Gray*, C. J., *Wells*, *Ames*, *Morton* and *Endicott*, JJ., and after a consultation of all the judges, their opinion was delivered on the same day by

GRAY, C. J. This application is made under the St. of 1873, c. 376, § 1, which provides as follows : " Whenever, prior to an election, five legal voters of any ward of a city shall make known in writing to a justice of the Supreme Judicial Court, in term

time or vacation, their desire to have such election guarded and scrutinized, it shall be the duty of such justice, upon such notice as he shall deem meet, or without notice, prior to such election, to appoint and commission two legal voters of such ward, who shall be of different political parties, and shall be known and designated as supervisors of election. Before entering upon the duties of their office, the said supervisors shall be duly sworn to the faithful and impartial discharge of the same."

As the application appeared to involve a grave question of constitutional law, and a similar application might according to the terms of the statute be presented to a justice of this court at any time, the matter has been argued before five of the judges, and our brethren who could not attend at the argument have taken part in the consultation.

The intention of the Legislature is clearly expressed that supervisors of election should be appointed by the justices of this court. The question is whether the statute is constitutional.

The Constitution, being the fundamental law of the Commonwealth, established by the people, binds and controls all their servants, legislative, executive and judicial. Every person chosen or appointed to any office is expressly required, before entering upon the discharge of its duties, to take an oath to support the Constitution. And by the eighteenth article of the Declaration of Rights a frequent recurrence to the fundamental principles of the Constitution is declared to be absolutely necessary to preserve the advantages of liberty and to maintain a free government.

The Legislature is vested by the Constitution with full power and authority from time to time to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes and ordinances, directions and instructions, " so as the same be not repugnant or contrary to this Constitution," as they shall judge to be for the good and welfare of this Commonwealth, and for the governing and ordering thereof, and of the subjects of the same. Every reasonable inference is to be drawn in favor of the validity of the acts of each branch of the government. But whenever application is made to the judiciary to carry into effect any statute in a particular case, and the statute in question appears to be

clearly repugnant to the Constitution, it is the duty of the judges to obey the Constitution and disregard the statute.

The people of Massachusetts, warned by experience of the inconveniences and dangers arising from the vesting of incompatible powers in the same persons under the royal government while this state was an English province, have made most careful provision for separating the three great departments of government, and for removing the judiciary, and especially this court, from political influences of every kind, as far as possible.

The final article of the Declaration of Rights declares that " in the government of this Commonwealth the legislative department shall never exercise the executive and judicial powers or either of them ; the executive shall never exercise the legislative or judicial powers, or either of them ; the judicial shall never exercise the executive or legislative powers, or either of them ; to the end it may be a government of laws and not of men." The Constitution further expressly prohibits the judges of this court to hold a seat in the House of Representatives, Senate or Council, or any other office or place under the authority of this Commonwealth, except that of justices of the peace through the state ; and requires all commissions to be signed by the Governor, and attested by the secretary or his deputy, and to have the great seal of the Commonwealth affixed thereto.

The justices of this court, as incidental to the large and varied judicial powers and jurisdiction conferred upon them by the Constitution and laws, embracing cases criminal and civil, in common law, equity, probate and divorce, may be and have been by many statutes authorized to appoint subordinate officers of various kinds to assist in the performance of their judicial duties, such as auditors, special masters in chancery, commissioners to take depositions in other states in cases pending here, commissioners to take bail, commissioners for the partition of lands, division of flats, or the setting off of dower, commissioners of sewers, or for the improvement of meadows and low lands, and commissioners to adjust the rights of transportation and modes of connection between connecting lines of railroad, or to assess the expenses, as between different counties, towns and other corpora-

tions, of maintaining roads or bridges. Parts of the duties per-
formed by some of these officers in carrying out their functions
are executive in their nature, and of a class which might be im-
posed by law upon strictly executive officers. But all the officers
above enumerated, when appointed by the court, are by express
requirement or necessary implication obliged to return a report
of their doings to the court for its judicial action.

The judges may also be authorized by law, except so far as
otherwise expressly provided by the Constitution, to appoint clerks
of courts. But the duties of such clerks are in no sense executive;
they are merely ministerial, and incident to the administration of
justice. On like grounds, the courts are authorized, in the absence
of the official prosecutor, to appoint a suitable person to perform
his duties; and to appoint all officers necessary to the transaction
of their business.

The courts may also try the title to many offices by *mandamus*,
*quo warranto*, or other proper process. But the title to an office
is a right that has always been held to be a proper subject of
judicial decision, except when the Constitution has committed it
to other hands. Analogous to this is the power conferred on this
court by statute to remove certain officers, and thus to declare a
forfeiture of their rights and a determination of their offices.

The power of naturalization may perhaps be considered as one
of the powers that may be entrusted by the Legislature in its
discretion to one or another department of the government. Be-
fore the adoption of the federal Constitution, it was habitually
exercised by the General Court of Massachusetts. Since the
adoption of that Constitution, it has been vested by the Congress
of the United States, with the assent of the state legislatures, in
the judicial tribunals of the states, as well as in those of the
nation. As it requires a final determination of all matters of law
and fact involved in the admission of the applicant to citizenship,
it may appropriately be made a subject of judicial investigation
and decision.

The St. of 1873, *c.* 376, §§ 2, 3, declares that it shall be the
duty of the supervisors of election to attend the ward meetings
to challenge the vote of any person whose qualifications they

doubt; to remain where the ballot boxes are kept, from the open-ing of the polls until all the votes are cast, counted, canvassed and sealed up, and the certificates and returns made out; to inspect and scrutinize the manner of voting and the method of keeping and marking the check list; to count and canvass every ballot cast, and, in the event of a disagreement between their count and canvass and those of the ward officers, to make a return of their count and canvass to the mayor and alder-men.

These supervisors, although entrusted with a certain discretion in the performance of their duties, are strictly executive officers. They make no report or return to the court or to any judge thereof. Their duties relate to no judicial suit or proceeding, but solely to the exercise by the citizens of political rights and privileges.

We are unanimously of opinion that the power of appointing such officers cannot be conferred upon the justices of this court without violating the Constitution of the Commonwealth. We cannot exercise this power as judges, because it is not a judicial function; nor as commissioners, because the Constitution does not allow us to hold any such office.

The statute in question can find no support in the act of Con-gress of 1871, c. 99, conferring power to appoint similar officers upon the judges of the Circuit Court of the United States, or in the action of those judges pursuant thereto; because the Consti-tution of the United States does not so explicitly restrain the judges from exercising executive or political functions as does the Constitution of this Commonwealth; and because the circuit judges acted individually and without opportunity of conference, and, so far as we are informed, without any question of consti-tutional power being raised or argued.          *Petition denied.**

---

* By the St. of 1874, c. 376, § 58, the St. of 1873, c. 376, is repealed.