(121 App. Div. 147)

### METZ et al. v. MADDOX et al.

(Supreme Court, Appellate Division, Second Department. July 16, 1907.)

1. ELECTIONS—RECANVASS OF VOTES—CONSTITUTIONALITY OF STATUTES.

Laws 1907, c. 538, providing for a hearing and determination by the Supreme Court of an election contest, confined to such questions of law and fact as arise on an inspection of the ballots themselves, does not violate Const. art. 2, § 6, requiring all laws creating boards or officers for counting votes at elections to secure equal representation of the two largest political parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Elections, § 247.]

2. CONSTITUTIONAL LAW—JUDICIAL FUNCTIONS—MINISTERIAL DUTY.

Laws 1907, c. 538, providing for a hearing and determination by the Supreme Court of an election contest, confined to such questions of law and fact as arise on an inspection of the ballots themselves, is not void as imposing only ministerial duties on the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 124, 137.]

3. JURY—RIGHT TO TRIAL BY.

In creating a new action or proceeding, not existing when the Constitution was adopted, for the trial of disputes of contestants of an election at the suit of a contestant, the Legislature is free to make it summary or by jury trial; and hence Laws 1907, c. 538, providing for a hearing and determination by the Supreme Court of an election contest, is not invalid for not providing for a jury trial, under Const. art. 1, § 2, providing that trial by jury in all cases in which it has been heretofore used shall remain inviolate forever.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, § 130.]

Jenks and Miller, JJ., dissenting.

Application of Herman A. Metz and others for an absolute writ of prohibition to Samuel T. Maddox, a justice of the Supreme Court, at Special Term, William R. Hearst, a candidate for election as mayor of New York City at the election of 1905, and his attorney, to desist from further entertaining or carrying on the proceeding for the recanvass and recount of the ballots of the said election, provided for by chapter 538 of the Laws of 1907, on the ground that the said act is unconstitutional and void. Denied.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

William B. Ellison and Eugene Lamb Richards, for relators.
Clarence J. Shearn, for respondent.

GAYNOR, J. It is provided in our state Constitution that all laws creating boards or officers for counting votes at elections shall secure equal representation of the two largest political parties. Article 2, § 6. The Legislature cannot override or fritter away this safeguarding provision by creating boards or officers not composed as it requires to recanvass and recount the votes of an election, and substituting the result to be thus ascertained for that of the constitutional election officers.

But such provision does not apply to a judicial review or trial of an election contest. If, therefore, this statute provides for a judicial hearing and determination by the Supreme Court of an election contest, it is valid. It is contended that it does not; that it imposes only ministerial duties on the Supreme Court, and is void for that reason also.

The canvassing and counting of votes by election officers is a ministerial and not a judicial duty. That is unquestionable; but it does not follow that the canvassing and counting of votes may not become judicial. No one would question that that is the case in a regular action by the people of the state by the Attorney General to oust an incumbent from an office (indeed, that is all there is to be done as a rule in such an action to ascertain the result); and of course it is the same in any other form of action or proceeding which the Legislature prescribes for the hearing and decision of an election dispute.

It is true that a ministerial duty cannot be turned into a judicial one merely by being transferred to the courts by the Legislature. The thing itself is what determines the branch of government to which it belongs. In the constitution of government in this country, state and national, government is divided into the three branches, the legislative, the executive, and the judicial, and the powers of government are divided among these three branches according to their kind. The legislative branch may not exercise powers which are executive or judicial; the executive may not exercise powers which are legislative or judicial; the judicial may not exercise powers which are legislative or executive. The powers which, because of their kind, belong to any one of these branches may not be assigned to or exercised by either of the other two, or by both of them combined; they can be performed by the branch to which they belong only.

All of this is in no wise violated in the present case. If this statute simply provided that the ballots should be turned over to the Supreme Court, and that said court should recount them, and certify the result, without a hearing and determination on notice to the contestants being had, it would require the performance of mere ministerial and not judicial work—work which by the structure of our government belongs to the executive branch and may not be put upon or performed by the judicial.

But its provisions are very different. It provides for a judicial hearing and determination by due process of law, i. e., on due notice, of a contest between candidates for an office for the certificate of election and possession of the office thereunder. Such a dispute certainly belongs to the judicial branch of government and is referable to it by the Legislature. That its trial requires the court to canvass

and count the votes makes such canvass and count a part of its judicial action. The foundation of the court's jurisdiction is the dispute, and everything necessary to be done in the trial of such dispute ʻis judicial.

If this statute provided that either one of the two contestants before us might bring an action in the Supreme Court by the regular form of summons and complaint for the trial of the dispute between them, and that in that action the court should canvass 'and count the vote in the same manner which such statute prescribes, none of us would say that it provided for a mere ministerial performance. That, instead, a proceeding begun by a petition of one of the contestants is provided for presents no different case.

The two decisions in the state of New Jersey in State ex rel. Ruh v. Prambach, 47 Ñ. J. Law, 85, and Kearns v. Edwards (N. J. Sup.) 28 Atl. 723, have no application to the question. There it was thought that the Legislature could only confer ministerial duties on the judge in the case, because the contest was of the office of member of the Legislature, and each house of the Legislature was by the Constitution made the sole judge of the election of its members. And even so, the act was not declared void. If the court had been asked to declare it void, and considered that question, it might have been able to see that as a whole the duties imposed were judicial. And such duties were not put on the court, but on a judge.

Many of our states have statutes for the summary hearing and determination of election disputes by the courts on the petition of a contestant, instead of leaving such contests unheard unless the Attorney General should consent to bring ·an action of quo warranto, or whatever the prescribed form may be, in the name of the people of the state. State ex rel. Andrew v. Lewis, 51 Conn. 113; Pedigo v. Grimes, 113 Ind. 148, 13 N. E. 700; Brown v. McCollum, 76 Iowa, 479, 41 N. W. 197, 14 Am. St. Rep. 228; Freeman v. State ex rel. McDonald, 72 Ga. 812; Ewing v. Filley, 43 Pa. 384; State v. Johnson, 26 Ark. 281; Govan v. Jackson, 32 Ark. 553; Ford v. Wright, 13 Minn. 518 (Gil. 480); Newton v. Newell, 26 Minn. 529, 6 N. W. 346; People ex rel. Budd v. Holden, 28 Cal. 123; Williamson v. Lane, 52 Tex. 335; State ex rel. Mullen v. Doherty, 16 Wash. 382, 47 Pac. 958, 58 Am. St. Rep. 39; Paine on Elect. c. 35; McCrary on Elect. § 391 et seq.

By its title this act is "an act for a judicial recount and recanvass" of the votes cast for the office of mayor in 1905 "in all cities of the first class in which the ballots have been preserved." In passing upon its constitutionality it has to be taken in its large sense as a whole, without too technical a strictness in respect of its terminology. In sum and substance it provides for a hearing and determination by the Supreme' Court of an election contest. Such hearing and determination is confined, however, to such questions of law and fact as arise on an inspection of the ballots themselves, and they are to be decided on the evidence furnished by the ballots alone.

On the petition of any candidate it requires the Supreme Court to make a summary canvass of the vote in the election district or districts specified in the petition. The court has to appoint a commissioner or commissioners to count the ballots on notice to all of the candidates

and in their presence if they appear, the count in each election district to be by only one commissioner. If counsel for any candidate differ from the commissioner in respect of counting a ballot, it shall be laid aside as a disputed ballot. Each commissioner submits to the court the disputed ballots together with a written statement of his count in each election district. The court rules upon each disputed ballot and determines its validity. The questions that may be raised are not limited to those that were raised on the canvass and count of the election officials. The court makes a final order for each election district contested of the result therein. An appeal may be taken to the Appellate Division from any such final order, and its decision shall be made by a final order. The regular board authorized to issue election certificates prepares a statement from the said final orders and from the regular returns in the election districts which have not been contested of the number of votes cast for each candidate and issues a certificate of election to the one having the largest number. If such certificate change the result of the election it shall supersede the certificate held by the incumbent, and no act of his thereafter shall have any official validity or authority. The candidate receiving such new certificate shall take the office.

Such are the provisions of the statute. By the procedure which it prescribes there is a judicial hearing and determination of an election dispute. This cannot be gainsaid without disregarding the substance for the letter. That the statute does not provide for a trial of every question which might be tried in an action by the people of the state to oust the incumbent, but only of such questions as can arise on and be decided by an inspection of the ballots, does not support the contention that it does not provide for a judicial hearing and determination. The Legislature is free to allow no judicial trial of election disputes at all, either at the suit of a candidate or of the state, from which it follows that it may allow one of a limited scope only.

Much may be said on the opposite side of this question, and I have not only considered but written it in order to test my judgment. In the last analysis, especially when the mind is freed from all verbal nets and entanglements, it seems at the best very difficult to say that there is no doubt on the matter. And that is the test of the right of courts to declare acts of the Legislature void. To depart from it is to enter. into the mere rage of upsetting what the Legislature has done.

The point that such a statute may not prescribe a summary hearing, but must provide for a jury trial, under that provision of our state Constitution which is common in the state Constitutions generally throughout the country, viz., that the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever (article 1, § 2), seems to be taken under a misconception. If trial by jury were used in actions of quo warranto at the time of the adoption of our Constitution, that secures that form of trial in such action or in any form of action or proceeding substituted for it. People v. Albany, etc., R. Co., 57 N. Y. 161. But under the common law and by statute such an action could only be brought by the sovereign. A contestant for an office could not bring any action or proceeding to oust the incumbent, or try the right to the office; and that has remained the case in this state down to the

present time. In creating a new action or proceeding—one that did not exist when the Constitution was adopted—for the trial of disputes of contestants of an election at the suit of a contestant, the Legislature is free to make it summary or by jury trial. That has been generally held throughout the country, as appears by the decisions of other states cited in the foregoing.

The application should be denied.

Application for writ of prohibition denied, with costs.

HOOKER, J., concurs.

RICH, J. (concurring). The sole question presented is as to the validity of chapter 538 of the Laws of 1907. The act is entitled:

"An act to provide for a judicial recount and recanvass of the votes cast for the office of mayor at the election of the seventh of November, nineteen hundred and five, in all cities of the first class in which the ballots have been preserved."

So far as it is necessary to state its provisions for the intelligent disposition of the questions presented, it creates a proceeding to be commenced by the presentation of a petition, by any candidate for the office of mayor voted for at the election referred to, in any city of the first class in which the ballots have been preserved, to the Supreme Court in any judicial district within which an election district to be affected is situate, upon receipt of which and after the giving of such notice as shall be prescribed, the court "must proceed to a summary canvass" of the vote cast in such election district. An order shall be made and served upon each candidate voted for at such election, directing the production of the requisite ballots in the county courthouse and their canvassing by an attorney appointed by the court for that purpose, designated a "commissioner," in the presence of all candidates affected or the counsel of such as have appeared in the proceeding. The commissioner is required to take from the ballot box— one by one—all of the ballots it contains, submitting each to the inspection of counsel for the candidates affected. While the act seems to imply that the commissioner shall state his opinion as to whether each ballot should or should not be counted for the candidate for whom it was cast, it provides that if counsel differs with him such ballot shall be "placed on one side" as a disputed ballot. After such consideration of all ballots cast in such election district, the commissioner is required to prepare a written statement of the number of undisputed ballots received by each candidate, which statement, with all of the disputed ballots, are directed to be submitted to the court, who is required to rule upon each ballot so disputed. If exception is taken to any ruling, the court is required to indorse its ruling and such exception upon the back of the ballot, and upon the completion of such rulings make, in triplicate, a final order for each election district specified in the petition, containing a complete return of the vote under review, which supersedes the returns of the election officers. Within ten days after the making of such final order a summary appeal therefrom may be taken to the Appellate Division. Upon the hearing of the appeal the order and the ballots to which exceptions were taken

in the court below are only to be considered. Upon the determination of the questions presented by such exceptions, the Appellate Division is required to make, in triplicate, a final order for each election district containing a complete return of the vote under review, which supersedes the order of the court below and the returns filed by the election officers. Within ten days after the filing of the order of the court below, or of the Appellate Division in case an appeal be taken, the board or officer authorized to issue certificates of election is required to prepare from said orders and the returns not superseded a tabulated statement of the total number of votes cast for each candidate at such election, certify and file the same in·their office, and within three days issue and deliver a certificate of election to the candidate thus shown to have received the greatest number of votes, which certificate, if it changed the previously declared result of the election, supersedes the certificate theretofore issued. It is further provided:

"Nothing in this act contained shall impair or affect any right under the Constitution or laws of this state to question by proceeding in the courts the right or title of the candidate who shall, as a result of said recount, be declared elected, but there shall be no judicial review of any ballots which shall have been canvassed in the proceedings herein authorized."

The candidate availing himself of the provisions of the statute is required, when he makes his application, to file with the clerk of the court an undertaking, with sureties approved·by the court, conditioned to pay the costs of the proceeding if they shall be awarded against him. If the result of such proceeding is to change the previously declared result of· the election, the costs of such proceeding are made a charge upon the city, to be paid in the same manner as other city charges. If the previously declared result remains unchanged, the costs are to be paid by the petitioner. The proceedings authorized by the statute are given precedence over all other business of the courts. The relators contend that this statute violates sections 1, 2, and 10 of article 6, section 6 of article 2, section 1 of article 1, section 1 of article 2, section 16 of article 3, and section 10 of article 8, of the state Constitution, and section 1 of the fourteenth amendment to the Constitution of the United States.

Upon the threshold of the consideration of the questions presented we may eliminate that provision of the statute which abridges the jurisdiction of the Supreme Court upon the trial of an action to determine the title to the office of mayor, by limiting its consideration to those ballots not considered or acted upon in proceedings instituted under the provisions of the statute under consideration. This clause does not violate the provisions of the Constitution; but, even if it does, it in no manner affects the validity of the other provisions of the statute, under the well-settled rule that when unconstitutional statutory provisions can be stricken out, and that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, that portion of the statute which is valid must be sustained. In the Matter, etc., Village of Middletown, 82 N. Y. 196; In the Matter, etc., Metropolitan Gaslight Co., 85 N. Y. 526; Skaneateles Waterworks Co. v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687.

We may likewise eliminate from our consideration that provision of the statute which assumes to take from the court its judicial discretion by providing that upon the presentation of the petition the court "must proceed to a summary canvass of the vote." While a literal construction of this wording would make it obligatory upon the court, upon the presentation of a petition simply reciting that the petitioner was a candidate for the office of mayor and voted for at the election held on November 7, 1905, in a city of the first class in which the ballots had been preserved, to proceed summarily, without the right to exercise its undoubted discretion as to whether the petition presented facts justifying such action, a proper construction of this clause will divest it of this obnoxious feature. In People ex rel. Morse v. Nussbaum, 55 App. Div. 245, 67 N. Y. Supp. 492, in which the construction of the words, "and it shall be the duty of the justice of the Supreme Court, to whom such application for the order is made, to grant such application," contained in section 4, c. 690, p. 1515, of the Laws of 1899 (which amended, chapter 383, p. 311, of the Laws of 1897, in which the clause quoted read, "if it appears to the satisfaction of the justice of the Supreme Court, to whom the application for the order is made, that such an order is necessary, then such order shall be granted"), was a question, Mr. Justice Kellogg says:

"Although the Legislature has taken such pains to make here its intent apparent, I cannot believe it really intended to make this feature of the law ineffectual by the coercion of judicial discretion, or making the justice to whom the application is presented simply a scrivener to subscribe his name. If the function is a judicial one, the Legislature could not use it, or decide for the court. If it does not call for the exercise of a judicial function, the Legislature could not impose the duty, nor could the justice discharge it."

He then cites Jenkins v. Putnam, 106 N. Y. 272, 12 N. E. 613, in which the Court of Appeals construed the word "must" in section 873 of the Code of Civil Procedure, holding that, "while it is said in section 873 that the judge 'must' grant the order, * * * yet we do not think that the language is absolutely mandatory, and that it was intended to deprive the judge of all discretion," and, continuing, says:

"This reasoning, and the need of relieving this part of the law from the charge of being repugnant to the Constitution, requires that the apparently mandatory language of this law, 'and it shall be the duty of the justice * * * to grant such application,' should be construed to mean that it is the duty of the justice to grant the order in case the application or petition, read as a whole, discloses that the examination of the witnesses is necessary for the purposes named in the act."

See, also, Matter of Davies, 168 N. Y. 89, 102, 103, 61 N. E. 118, 56 L. R. A. 855, where this reasoning is sustained.

It is apparent that the purpose and intent of the Legislature in the act under consideration was to bring before the court for review the identical ballots which were cast at the election in the identical condition in which they were when cast, and that the action of the court was to be upon the identical conditions as to the ballots and their count that existed at the close of the polls on election night. The requirements of the statute are not met by a petition simply showing that the petitioner was a candidate for the office of mayor, at such election, in a city of the first class in which the ballots have been preserved; but he is bound

to further show that the ballots cast at that election are intact and in the same condition as when cast, that they have not been altered or in any manner tampered with since they were deposited by the electors in the ballot boxes, and until primarily satisfied of these facts no mandatory obligation rests upon the court to proceed to the consideration of the ballots or discharge of the duties required by the statute. It is thus required to exercise a judicial function, namely, that of determining whether the petition conforms to the requirements of the statute, and the judicial discretion is in no manner and to no extent interfered with. When there is room for two constructions of a statute, the court must adopt that which is in harmony with the Constitution. Matter of New York & Long Island Bridge Co., 148 N. Y. 540, 42 N. E. 1088. A statement of a few of the propositions apparent from an inspection of the record will dispose of many of the questions presented by the learned counsel for the relators.

1. There can be no legal right to the possession of an office to which the occupant has not been legally elected. The statute does not assume to divest the occupant of the possession of the office, if the proceeding authorized by its provisions establishes such election. The only right involved in this proceeding is that of the possession of the office of mayor of the city of New York, which is not a personal right, and consequently not within the provisions of section 1 of article 1 of the Constitution.

2. The relator, George B. McClellan, is not deprived of his constitutional right of having his title to office determined in a quo warranto action, by jury trial.

3. He cannot be deprived, by any proceeding under the statute, of property as the subject-matter of such proceeding. The right to possession of the office of mayor is not property or a property right within the meaning of the Constitution. It is well settled that an office is not the property of the office holder, but is a public trust or agency, not held by contract or grant, and to or in which the officer has no vested right. Connor v. Mayor, etc., of New York, 5 N. Y. 285; Smith v. Mayor, etc., of New York, 37 N. Y. 518; McVeany v. Mayor, 80 N. Y. 185, 36 Am. Rep. 600; Nichols v. MacLean, 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730; Koch v. Mayor, 152 N. Y. 72, 46 N. E. 170. The official rights of the holder of an office are not within the provisions of section 6 of article 1 of the Constitution, prohibiting the taking of property without due process of law.

4. The contention that the statute takes from voters the right of having their votes, duly cast, canvassed, and counted, given due force and effect, I believe to be without merit. The question of whether the votes cast were duly canvassed and counted is in the end a question of law, to be judicially determined in cases provided for by this statute, by methods which give and secure absolute effect to every ballot cast, which was duly canvassed and counted.

5. The contention that the statute creates or imposes a tax, without stating its amount, and refers to other laws to fix such tax, in violation of section 24 of article 3 of the Constitution, is without force, in view of the decision of the Court of Appeals in Jones v. Chamberlain, 109 N. Y. 100, 16 N. E. 72, that the provisions of the section

referred to apply only to a general tax upon all of the property of the state, and do not apply to a local tax upon a particular section.

These views, I think, dispose of all questions presented requiring consideration, with the exception of those dependent upon the contentions, first, that the act is a private and local act; second, that it is unconstitutional because of its provisions for a counting of the votes by a commissioner, instead of by a bipartisan board; and, third, that it imposes upon the court nonjudicial functions or duties.

I am unable to concur with the contention that the statute under consideration is a private or local bill within the meaning of section 18, art. 3, of the Constitution. It applies to all cities of the first class in which an election was held on November 7, 1905, and in which the ballots have been preserved. While our personal knowledge, or facts presented upon the hearing of this application, may demonstrate that it is applicable to and can take effect only upon the respective rights of Mr. Hearst and Mr. McClellan, derived by them from the election held in the city of New York for mayor on November 7, 1905, I regard the rule well settled by the Court of Appeals, after consideration of all the cases in which this question was involved, and restated in several important cases, that a statute embracing and equally applicable to all things of a certain class, or municipal subdivisions in the same class, is a general and not a local act, although by reason of some limitation therein contained, based on population or other condition (in the case under consideration upon the preservation of the ballots), only a particular locality or city can, under actual situation or circumstances receive its benefits or be subject to its provisions, and that in the consideration of this question courts are limited to the provisions of the statute itself and a consideration of the conditions and circumstances leading to its enactment and the evils it was designed to remedy. Ferguson v. Ross, 126 N. Y. 459, 27 N. E. 954; Waterloo Woolen Manufacturing Co. v. Shanahan, 128 N. Y. 345, 28 N. E. 358, 14 L. R. A. 481; Matter of Dobson, 146 N. Y. 357, 40 N. E. 988; Matter of Henneberger, 155 N. Y. 420, 50 N. E. 61, 42 L. R. A. 132. There is no limitation or restriction contained in this act that takes it out of the rule of construction established by these cases, within the operation of which it is a general and not a private or local act. In addition, I think that, within the rule declared in Ferguson v. Ross, supra, the public interests affected by this statute are sufficient to make it a general act. In that case it was held that a statute making it a punishable offense to deposit certain refuse in the North and East rivers or in the bay of New York was, by reason of the interest of all the people of the state in the protection of the harbor of New York, the impairment of which would affect the prosperity of the state, made the act a general and not a local one. The principles declared in that case apply with as great force in the case at bar. ·

This conclusion, I believe, disposes of the questions resting upon the assumption that the act is a private or local act, namely; that the act embraces more than one subject and that the subjects contained therein are not set forth in the title, that the act provides for the opening and conducting of the election of November 7, 1905, and that it grants exclusive privileges to unsuccessful candidates for the office

of mayor.    Nor am I in accord with the contention that the provisions
of the act providing for the appointment of commissioners to count
and return the number of unchallenged ballots cast in the election, to-
gether with such ballots as are disputed, to the court for considera-
tion and judicial conclusion as to their legality, violates the constitu-
tional requirement that "all laws creating, regulating or affecting
boards or officers charged with the duty of registering votes or of dis-
tributing votes at the polls to voters, or of receiving, recording, or
counting votes at an election, shall secure equal representation of the
two political parties which at the general election next preceding that
for which such boards or officers are to serve, cast the highest and
next highest number of votes," for the reason that this section applies
only to officers or boards serving at an election, and its object and
purpose is to afford an equal opportunity to party representatives in
acquiring information relating to the conduct of, and in actions taken
at, an election in the interest of their respective party candidates.    The
boards and officers connected with the election in question were bi-
partisan, appointed in conformity with the requirements of law, and
all the rights, benefits, and advantages secured or intended to be se-
cured to candidates or political parties by such provision were had and
enjoyed at such election.    Such benefits and advantages are to be no
more interfered with, or the results accomplished thereby changed,
in a proceeding under this statute, than they would or might be in a
quo warranto action or a proceeding by mandamus, under the provi-
sions of the election law, for a determination of the legality of ballots
cast and counted, their recanvass, and the recording of the results
reached therein by the court: and there is no more reason why the
constitutional provision quoted should apply to a proceeding under this
statute than to the action and proceeding referred to, which have for
their purpose the same result, namely, the judicial determination of
the legality of the ballots cast and counted, and which candidate re-
ceived the greatest number of the legal ballots cast, with the proper
record of the conclusions reached.    The commissioner is no more nor
less than a referee, through whose action the facts required to enable
the court to pass intelligently upon the questions presented are as-
certained.    He has no authority to pass upon the question of whether
any ballot cast is valid or void, or whether it was properly or improp-
erly counted.    His powers are limited to counting and reporting the
number of ballots cast that are not disputed, and returning those which
are, which duty he performs after notice to and in the presence of the
candidates and their counsel.    It is the court only that has the power
to adjudicate and determine the legality of the ballots cast and of
their canvass at the election, the exercise of this power alone can
change results to the detriment of candidates, and the authority so
conferred upon and limited to the court is substantially the same and
its exercise produces the same results in the first instance that flow
from the exercise of the same authority vested in courts by the Legis-
lature in mandamus proceedings under the election law and in the
court and jury in quo warranto actions.    It must be kept in mind
that every presumption must be indulged in favor of the validity of
this act, and that where a reasonable doubt exists as to the validity or

invalidity of a statute the question must be resolved in favor of its constitutionality. It is a well "settled rule that only when required by the most cogent reasons, nor, indeed, unless compelled by unanswerable grounds, will a court declare a statute to be unconstitutional." People v. Budd, 117 N. Y. 1, 13–14, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460.

This leaves for consideration only the question of whether the act imposes upon the court nonjudicial or ministerial functions. A judicial act has been held to be:

"An act done by a member of the judicial department of government in construing the law or applying it to a particular state of facts presented for the determination of the rights of the parties thereunder; an act done in furtherance of justice, or a judicial proceeding by a person having the right to exercise judicial authority; an act that determines what the law is, and what the rights of the parties are, with reference to transactions that have been had; an act that undertakes to determine questions of right or obligation; an act done or performed in the exercise of judicial power; the performance of a duty which has been confided to judicial officers to be exercised in a judicial way. While the term ordinarily imports the exercise of judicial power, it may also involve within its meaning the exercise of judicial discretion or judgment." 23 Cyc. p. 1614.

A ministerial act, in law, is defined in the Century Dictionary and Cyclopedia (volume 5, p. 3777) as:

An "act, office, or power that is to be performed or exercised uniformly on a given state of facts, in a prescribed manner, in obedience to law or the mandate of legal authority, without dependence on the exercise of judgment as to the propriety of so doing."

The act in question was clearly designed as a judicial review of the declared result of an election and a judicial determination of the legality of such of the ballots cast as were disputed or challenged, and of their proper count by the election officers, thus determining who was entitled prima facie to the possession of the office, reserving to the candidate ascertained to have received the lesser number of votes his right to trial by jury in an action of quo warranto of the title to the office in the same manner and to the same extent that he was entitled to prior to the enactment of the statute. In this proceeding the functions devolved upon the court are the determination of whether the petition presented conforms to the requirements of the statute and states facts sufficient to justify the procedure authorized; the approval of the form and sufficiency of the bond; the appointment of one or more commissioners to ascertain and report the facts upon the questions to be presented and determined at a hearing in the presence of such candidates and their counsel; the judicial determination of the legality of each ballot cast which is disputed or challenged and in issue, by ruling upon each separately; the making of orders embodying the results and conclusions reached and those necessary to carry the determination into effect. None of these duties are clerical, all require the exercise of judgment, and in their performance both the Supreme Court and the Appellate Division exercise judicial functions and act judicially; for they must decide the questions of law arising upon the facts presented and ultimately determine—and such determination has the effect of an adjudication—the rights of the candidates to the pos-

session of the office. This conclusion is clearly justified, I think, by Matter of Davies, supra.

Neither of the decisions, Case of Supervisors of Election, 114 Mass. 247, 19 Am. Rep. 341, or Matter of Attorney General, 21 Misc. Rep. 101, 47 N. Y. Supp. 20, upon which the relators rely as authorities for their contention in this respect, is in point or controls the disposition of the question under consideration. In the Massachusetts case the decision of the court is placed upon the controlling specific ground that by the provisions of the statute before the court the supervisors were strictly executive officers, who made no report or return to the court or to any judge thereof, whose duties related to no judicial suit or proceeding, but solely to the exercise by the citizens of political rights and privileges, distinguishing such duties from those of several classes of appointees named in the opinion, many of whose functions might be imposed by law upon strictly executive officers but were held judicial because, as the court says, they were "by express requirement or necessary implication obliged to return a report of their doings to the court for its judicial action"—precisely the condition and requirement existing in the statute under consideration in the case at bar. In the Matter of Attorney General, the decision of the court is placed upon the fact that the duties imposed upon the court by the statute being considered were merely ancillary or auxiliary to the Attorney General in the performance of his duties, leading to no judgment or determination of the court, and therefore not judicial. In the statute under consideration the commissioner is required to report to the court, and its determination is an adjudication upon the subject-matter.

Words might have been selected more clearly expressing the intent and purposes of this statute, relieving it from the strained and technical construction sought to be given it; but, in view of the well-established rule permitting courts in the construction of a statute to consider the facts leading to its enactment and the evils it was designed to remedy, so plainly apparent from the history of the municipal election in the city of New York in 1905, the long delay incident to the trial of an action of quo warranto, and the insistent demand of the people of the state that some legal and summary method of procedure should be employed to accomplish that result, so forcibly stated by Gov. Hughes in the following language:

"It is well known to all who are conversant with sentiment in the city of New York that there is widespread doubt as to the accuracy of the official canvass. The failure to resolve that doubt and to determine in a prompt and decisive manner satisfactorily to all fair-minded citizens the result of the election has become a grave public scandal. * * * In the public interest and for the credit of our institutions this matter must be settled. * * * In the belief that public policy requires the settlement of this controversy as speedily as its nature will permit, and that it will be most unfortunate that legislation to this end should fail, I approve this bill."

It follows as an inevitable conclusion that in the enactment of this statute the legislative intent to authorize a summary judicial review and adjudication of the legal rights of the candidates to the possession of the office of mayor is apparent, and that the duties vested in the courts to make this intent effectual and thus accomplish this result are

judicial, and not ministerial, the act must be held constitutional, and the application for a writ of absolute prohibition denied, and the alternative writ vacated and set aside, with costs to the defendants.

JENKS, J. (dissenting). I have considered the statute, mindful that every presumption of validity makes for it, desirous to sustain it, to end agitation which many think is just, and anxious to respect an act of the legislative branch of government. The thorough opinion of my Brother MILLER, in which I concur, confines me to brief discussion, and, indeed, makes even that almost superfluous,

The state Constitution provides that all boards or officers for receiving, recording, or counting votes at elections shall be made up equally from the largest two political parties. This statute offends, in that it provides a count and canvass at an election made by a board or officers not composed in accord with this provision of the Constitution. The title of the act provides for a "recount" and a "recanvass." But these words are only accurate, in that there has been a count and a canvass; for this "recount and recanvass," if made, has no relation to any former count or canvass, by way of verification, check, or correction thereof. It is made ab initio, and is in itself complete, from taking up the ballots to the issue of a certificate of election based solely on its result. And this count and canvass is declared "to supersede * * * in all respects" the returns of the election officers. Whatever was done by the election officials is as if it never had been done. It is as if a statute passed prior to this particular election commanded that the Supreme Court exclusively should make the sole original count at that election. In fine, the statute substitutes nunc pro tunc the Supreme Court as a counting and canvassing board for a particular election, in place of the constitutional election officers. How, then, can such count and canvass be a "recount" and a "recanvass"?

It seems clear that the count and canvass of this statute is within the constitutional words "at elections," for the reason that the words do not mean necessarily a count "eo instante," but refer to the count related to an election and made to determine its result. The result of this election is reached from this count and canvass alone, whenever made. None is more capable of meeting the question of this offending against the Constitution than the learned counsel for the respondent; but he does not, either by his argument that it provides for a "recount after an election," for the reasons I have stated, or by his showing that votes are recounted, and not by bipartisan agents, in quo warranto and in mandamus, ·which showing is not in point, for the reason that such recounts are not at elections, but are incidental to recognize legal proceedings in courts of law to determine the title to office, wherein evidence is or may be taken, and of which the result is judicial judgment or decree.

The fact that the statute casts a duty on a court does not exclude the statute from the purview of this constitutional provision. If a ministerial act is devolved upon an agency which already has judicial powers, that act does not thereby become judicial; for the nature of the

duty is determined by what is to be done, and not by the doer. As we think that powers cast upon a judge should be judicial, and powers devolved upon a Legislature should be legislative, we are naturally inclined to regard and to strive to define any new power as logically lodged—if it be in a judge, judicial; if in a Legislature, legislative. But devolution is not definition. And there should be no confusion of thought, due to an abnormal assignment of powers, that if a court is designated to' act it is therefore a court which acts. The policy of this statute is to call in another to do exactly what has been done. What has been done was done by laymen—constitutional officers—and now the court is but to count and to canvass, as did these officials; and in this doing the court is neither authorized nor required to employ broader powers or its general judicial powers. As a complete canvass and count requires a reckoning of the ballots disputed as well as undisputed, and hence a passing upon the former kind, the court is clothed by this statute with the power to canvass and to rule upon the disputed ballots; but so, too, were the election officials. Even the Appellate Division, on review is required to canvass such ballots in a "summary way." This to my mind is not the conferring of judicial power, as contradistinguished from the similar power vested in the election officials. The court may be better qualified, but its means of determination are the same. The opinion of MILLER, J., conclusively shows that the duties which were done by the election officers were ministerial, or in some minor respects but quasi judical.

I think that the statute does not provide a judicial hearing and determination of an election contest. It is true that it provides for a determination of an election which was contested; but the determination is by the same method as is prescribed by the election law, namely, a count and a canvass. It is the means, not the method, that is changed. What feature in the statute justifies the conclusion that it prescribes judicial action? Not the devolution of this duty upon a court, for the reasons already given. Not the character of the main duty, a count and canvass, for that is ministerial. Not the preliminary duty of determination that the ballots are in existence, for that is fulfilled by their mere physical preservation, and the ascertainment whether a state of facts exists which requires the doing of an act prescribed is not judicial (State v. Hathaway, 115 Mo. 36, 49, 21 S. W. 1081), and if it be otherwise in this case, it is incidental and preliminary. Not any prescribed exercise of judicial functions, for the court is limited to ministerial acts or such as are equally vested in the board of canvassers. Not the taking of evidence, because the court cannot. Not the right to consider the application on the merits, for the court has no alternative, but it must proceed to the count. Not the provision for notice, for there is none of the application, and the notice of the count is but natural to the publicity thereof, and would doubtless be provided in the election law, but that the count is at a stated time. Not a judicial mandate, judgment, or decree, for the proceeding ends in "an order," which is nothing more than a return like unto that of the election officials, and which, exactly like the existing return in the districts wherein no count is made, is of the basis for a tabulated statement to be

prepared "by the board or officer authorized to issue certificates of election." There is no judicial power of review, because there is nothing to review. The original returns are entirely superseded. There are no parties before the court asking for judicial action which shall determine the relative rights of the litigants upon the facts and in accordance with law expressed in a judgment or decree. There is no ministerial act of board or officers up before the court for review. The proceeding does not rest upon any complaint for fraud, violation of law or statute, or other wrongdoing. Of course, in a sense there was and there is a "dispute," which is not abated so long as all of the candidates do not acquiesce in the count and canvass made; and dissatisfaction with the result thereof has led to this statute. And so the court is now called upon for reasons of convenience, and I think of public confidence, as counter and canvasser only, and not to reach a result by the exercise either of broader powers conferred by the statute or of its general judicial powers. The certificate of election is no more in controversy in this proceeding than it was in the original count and canvass; for in either case it but follows the ministerial act of count and canvass. It is not now to be awarded by the court in its judicial capacity, but it issues on the tabulation of the returns or orders by the regular election officials. "A judicial act is a duty which has been confided to judicial officers to be exercised in a judicial way." Supervisors of Onondaga v. Briggs, 2 Denio, 33.

After all, the predominant consideration is that, whatever the nature of the act of count and canvass, whether judicial, or quasi judicial, or ministerial, the Constitution commands that the count and canvass at an election shall be made by bipartisan agents. The policy or the purpose of this legislation is not our concern, any more than the policy of any candidate who seeks or who opposes this proceeding. Legal objection calls for legal adjudication, and with that made we reach our limitations.

MILLER, J. (dissenting). The following is a brief summary of the material provisions of the act before us, viz.: Upon petition and upon such notice as the court shall prescribe the Supreme Court must proceed to a summary canvass of the vote in any election district specified, and shall make an order that the requisite ballots shall be produced in the courthouse and canvassed in the presence of all candidates affected, or their counsel, by a commissioner appointed by the court, who shall canvass the ballots one by one and shall make a written statement of the count upon all the undisputed ballots which, together with the disputed ballots, shall be submitted to the court. The court shall then proceed to canvass the disputed ballots, ruling upon each in turn, and, if exception is taken to any ruling, it must indorse ruling and exception upon the back of the ballot. At the conclusion of said canvass the court shall make in triplicate a final order for each district, containing a complete return of the vote under review. One of said orders shall be filed in each office where the returns of the election officers have been filed, and shall in all respects supersede said returns. A summary appeal from said order may be taken to the Appellate Division within ten days. Upon such appeal only the ballots as to which exception was taken and the

order of the court below shall be produced, and the Appellate Division shall proceed to canvass such ballots in a summary way and make in triplicate a final order for each district containing a complete return of the vote under review, one of which shall be filed in each office where the returns of the election officers have been filed, and shall, together with the order of the court below, in all respects supersede said returns. Within ten days after the filing of said orders containing said returns, the board or officer authorized to issue certificates of election must prepare from said orders and from the returns not superseded a tabulated statement showing the total number of votes cast for each candidate, file the same in the office of said board or officer, and within three days issue and deliver a certificate of election to the candidate shown to have received the greatest number of votes, which certificate shall in all respects, if it shall change the previously declared result of the election, supersede the certificate theretofore issued. Upon the receipt of such new certificate the candidate certified therein to have been elected shall forthwith take office, be invested with the powers, and perform the duty appertaining to such office. I quote the following:

"Any justice of the Supreme Court may make such summary order or entertain such proceedings as may be necessary to carry said recount into effect, and secure to the candidate shown by said recount to have been elected, full possession of the office of mayor and the exclusive right to exercise the functions of said office.

"Sec. 3. Nothing in this act contained shall impair or affect any right under the Constitution or laws of this state to question, by proceedings in the courts, the right or title of the candidate who shall, as a result of said return, be declared elected, but there shall be no judicial review of any ballots which shall have been canvassed in the proceedings herein authorized."

The act also provides that the proceedings authorized by it shall have precedence over all other business of the court.

As we view it, the fundamental question to be determined in this case is whether the act invests the court with judicial functions. It may be that the court acts judicially in making the ex parte order for the production of the ballots; for, although the language of the statute is mandatory, it may be inferred that before making the order the court should be judicially satisfied that the petitioner was a candidate for the office of mayor voted for at the election specified and that the ballots have been preserved. See Matter of Davies, 168 N. Y. 89, 61 N. E. 118, 56 L. R. A. 855. But that order is preliminary and incidental to the real purpose to be accomplished—i. e., the canvass of the vote—and the character of the latter act must determine the question before us. The court is to count—to canvass—the ballots, to rule upon each in turn, and then to make an order containing a complete return. The fact that this is to be done in part by a commissioner, then by the court, and finally, in respect of ballots as to which exception was taken, by the Appellate Division, does not change the case, because at no stage can anything be done except to canvass ballots and make a statement thereof. Testimony cannot be received, for the Appellate Division can have before it only the order of the court below and the ballots as to which exception was taken. This is precisely what inspectors of election do. They rule upon each ballot in

turn, determine whether it shall be counted, and, if so, how. They cannot look beyond the face of the ballot; no more can the court in making the canvass provided by this act. They make a return of their canvass to a canvassing board; precisely what this act requires the court to do. Moreover, the court does not make this canvass for the purpose of reviewing the one already made, and of compelling the correction of errors therein. It cannot even have before it the statement of such canvass, and, even if permitted to know what that showed, could take no cognizance thereof, because its duties are limited to making what is practically an original canvass, which is to supersede in all respects the one theretofore made. The original returns are treated as though they had never existed, and new returns are to be made by the court to a canvassing board, which is to canvass them and thereupon to issue a new certificate of election. The act does confer upon a justice of the Supreme Court the judicial power to give the candidate receiving the new certificate of election possession of the office. This is but the usual power of compelling in a summary way the delivery of books and papers to the one having the certificate of election. See section 2471a, Code Civ. Proc. It is appropriate to oust an intruder, but not to try a disputed title to an office. See Matter of Bradley, 141 N. Y. 527, 36 N. E. 598. By this act the exercise of this power supplements the delivery of the certificate of election issued upon the canvass of the returns made by the court, precisely as under the general law it supplements the delivery of such certificate issued upon the canvass of returns made by inspectors of election; and that provision emphasizes the purpose and intent of the act to obliterate and to supersede by the proceeding authorized by it all that the regularly constituted returning boards have done, and to invest the courts with the powers and duties of said boards, but not as an incident to any legal action or proceeding; and, that there might be no doubt on this head, the act expressly preserved the right to question, by proceeding in the courts, the right or title of the candidate so declared elected. The provision that there shall be no judicial review of the ballots so canvassed, coupled as it is with said last-mentioned provision, must mean simply that the correctness of said canvass cannot be disputed. The canvass made by the inspectors of election could be made conclusive if the Legislature saw fit. It is therefore indisputable that in substance this act requires the Supreme Court to do precisely what inspectors of election do, and no more.

Inspectors of election, returning boards, judges of election, as they are termed in some jurisdictions, have never, so far as we have been able to ascertain, been regarded as judicial officers in the sense in which we now use the term. Their duties may be ministerial or quasi judicial, depending upon the law defining them, precisely the same as other executive or administrative officers may be charged with both ministerial and judicial duties. It was decided in England early in the eighteenth century that returning officers may be liable in a civil action for damages (Ashby v. White, 2 Ld. Raym. 938); and while Lord Campbell applied the maxim that no man shall be a judge in his own cause to a returning officer who had returned himself as elected (see Quinn v. Ow-

ens, 28 L. J. [N. S.] 316), the doctrine that they are not entitled to the immunity accorded judicial officers seems not to have been departed from. See Bryce v. Belcher, 3 C. B. 58; Id., 4 C. B. 866; Pickering v. James, 42 L. J. (N. S.) 217. The proposition that they are not judicial officers, and that for the most part they act ministerially, was early settled and has been steadily adhered to in this state. People v. Van Slyck, 4 Cow. 297; People v. Pease, 27 N. Y. 45, 84 Am. Dec. 242; Goetcheus v. Matthewson, 61 N. Y. 420; People v. Bell, 119 N. Y. 175, 23 N. E. 533; People v. Board of Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646; Matter of Hamilton, 80 Hun, 511, 30 N. Y. Supp. 499; People v. Austin, 46 N. Y. Supp. 526, 20 App. Div. 1.

An examination of our election law (sections 105–114, c. 909, pp. 955–965, Laws 1896) discloses that the duties of the inspectors are so carefully defined as to leave nothing to their judgment or discretion respecting the duty of canvassing the votes, except as every ministerial officer has to decide what the law commands him to do. The statute prescribes in great detail just how the elector may mark his ballot, and just how the inspectors must make their canvass, and in making it they act ministerially. See Matter of Atkinson, 28 Misc. Rep. 694, 59 N. Y. Supp. 792, affirmed 45 App. Div. 628, 61 N. Y. Supp. 1131; People ex rel. Brink v. Way, 179 N. Y. 174, 71 N. E. 756; Hearst v. Woelper, 183 N. Y. 274, 76 N. E. 28, and cases cited supra. It is a universal rule that mandamus will not lie to compel a judicial officer to act in a particular manner, and yet there can be no doubt that, independently of statute, mandamus will lie to compel boards of inspectors, at least before they have become functus officio, to canvass ballots in the manner prescribed by law. But beyond this the Legislature has recognized that mandamus is the proper remedy, and has expressly provided by section 114 of the election law for the issuance of that writ. See, too, on this subject Hasbrouck v. Bd. of Supervisors, 135 N. Y. 522, 32 N. E. 242; People ex rel. Feeney v. Bd. of Canvassers, 156 N. Y. 37, 50 N. E. 425. But it does not follow that the court can do what it may require by mandamus of an administrative officer. Without tracing the origin of that writ, it may be said that it has always been regarded as an important function of the courts to compel by mandamus administrative officers to obey the law; but, because the court may examine ballots as an incident to the discharge of a judicial function (i. e., the granting of a writ of mandamus commanding election officers how they shall canvass them), it does not follow that it is in any sense a judicial function to canvass ballots for the purpose of performing a ministerial act (i. e., the making of returns to a canvassing board). See People v. Bell, supra.

But, even assuming that the returning board in canvassing the ballots and making the return acts quasi judicially, it does not follow that they discharge any judicial function. Judicial power is defined by Bouvier as "the authority exercised by that department of government which is charged with the declaration of what the law is and its construction so far as it is written law; the power to construe and expound the law as distinguished from the legislative and executive functions." "It is the power of a court to decide and pronounce a judgment and

carry it into effect between persons and parties who bring cases before it for decision." Miller on the Constitution of the United States, 314. Mr. Justice Nelson, in charging a grand jury respecting the "fugitive slave law," distinguished between the judicial power "mentioned in the Constitution and vested in the courts" and quasi judicial power "invested, from time to time, by the legislative authority, in individuals, separately or collectively, for a particular purpose and limited time." See Charge to Grand Jury, 1 Blatchf. 644, Fed Cas. No. 18,261. "Judicial power is the power of interpreting law—of declaring what the law is or has been." Anderson's Dictionary of Law, 579. It was held in Massachusetts that a statute directing the justices of the Supreme Court to appoint supervisors of election was unconstitutional, for the reason that the duties of such supervisors related to no judicial suit or proceeding, but solely to the exercise by the citizens of political rights and privileges. Case of Supervisors of Election, 114 Mass. 247–251, 19 Am. Rep. 341. And while the United States Supreme Court held that a similar act, authorizing the Circuit Courts to appoint supervisors of elections at which representatives to Congress were elected, was valid, the decision was placed upon an express provision of the federal Constitution empowering Congress to vest the appointment of inferior officers in the President alone, in the courts of law, or in the heads of departments; and the discussion of the court in that case in no way militates against the proposition that the actual conduct of elections is not within the judicial power as defined in the Constitution. See Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717.

Chief Judge Cullen, in People ex rel. Schau v. McWilliams, 185 N. Y. 92–95, 77 N. E. 785, explained the different senses in which the terms "judicial" and "quasi judicial" are used in judicial literature, and pointed out that, although an administrative or executive officer or board might have to exercise judgment, that did not make their action judicial in character. In determining whether this act imposes judicial functions, we must not be led into any confusion of thought by the fact that the court is required to discharge such functions, because the character of the act in respect of whether it is judicial or not must be determined by what is required to be done, and not by the agency selected to perform it. Of course, we start with the presumption that the duties imposed upon the court are judicial, and examine every line of the act in the light of that presumption to ascertain what those duties are; but, when we perceive what the act requires the court to do, we must ignore the fact that the court is to do it, in determining its character. In a judicial proceeding or action instituted by some appropriate writ or process, the court tries issues of fact or law framed in some appropriate manner, and pronounces a judgment, decree, or order which settles the controversy; but under this act it is required simply to canvass ballots as the law prescribes for the purpose of performing a ministerial act (i. e., the making of a return to a canvassing board); and the mere canvassing of ballots, except as an incident to some judicial proceeding, is in no sense a judicial function. When all that this act requires has been performed, the question of the title to the office, which has always been recognized as a proper subject for judicial cognizance, will remain pending and undetermined. In early

times the proceeding to try title to office was instituted by the writ of quo warranto, later by information in the nature of quo warranto, now superseded in this state by the action of quo warranto; and in England and in many jurisdictions in this country election contests may be tried in a summary proceeding instituted by petition. But in all such cases the court determines the judicial question of the title to the office, not the administrative question of who shall receive the certificate of election; and in the trial of that question the courts will go behind the certificate of election, the returns of the returning board, the canvass by the canvassing board, and even the ballots themselves, and take evidence to determine who in fact received the greatest number of lawful votes. People v. Pease, supra; People v. Thacher, 55 N. Y. 525, 14 Am. Rep. 312; People v. Livingston, 79 N. Y. 279. I have made diligent search in the statutes of many states of the Union, and have been able to discover but one statute which required a judicial officer to perform the duties of a returning board (see Gen. St. N. J. p. 1327, § 195); and under that statute the courts of New Jersey held that the justice of the Supreme Court acted ministerially. Ruh v. Frambach, 47 N. J. Law, 85; Kearns v. Edwards (N. J. Sup.) 28 Atl. 723. It should be noted that that statute imposed the duty, not on the court, but on a justice thereof, and that the Constitution of New Jersey contains no such provision as the one to be discussed infra.

We come now to the express provision of our Constitution which we think is violated by this act; but, before considering it, we wish to say that we do not desire to be understood as minimizing, by not discussing, the importance of the fundamental proposition that under our form of government it is not competent for the Legislature to invest the courts with nonjudicial functions, except as an incident to the discharge of such as are judicial. It is now finally settled in the jurisprudence of this state that the express enumeration in the Constitution of the powers of the three great branches of government necessarily excludes each from exercising the functions of the other, and there must be no abatement now of the efforts of the courts to preserve our free institutions by preventing, whenever properly called upon to do so, the encroachment of one branch of government upon the functions of a co-ordinate branch, or the burdening of one with the duties of another. See, on this head, the discussion of Judge Vann and the cases cited by him in Matter of Davies, 168 N. Y. 89–102, 61 N. E. 118, 56 L. R. A. 855. This question is emphasized in this case by the fact that the court is required to suspend its regular business, and keep suitors waiting at its bar, while it canvasses, one by one, the 232,195 ballots which the petition before the court below asks to be canvassed again.

Article 2, § 6, of the Constitution, provides as follows:

"All laws creating, regulating or affecting boards of officers charged with the duty of registering voters, or of distributing ballots at the polls to voters, or of receiving, recording or counting votes at elections, shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes."

It does not seem necessary to add to what has been said respecting the character of the duties imposed upon the court by this act to demonstrate that every possible avenue for reaching a construction in harmony with said constitutional provision has been carefully closed by express provisions of the act. The only answer to this proposition addressed to us either on oral argument or by printed brief is (a) that this canvass is required to be made, not "at election," but 20 months "after an election"; and (b) that, if there were anything in this point, it would require a bipartisan jury in a quo warranto action and a bipartisan court in mandamus under the election law. As we have shown, the court is required by this act to canvass the ballots and make a return thereof precisely the same as the returning boards are required to do in the first instance, and to do this, not for the purpose of correcting errors, but of entirely superseding their work, as though it had never been done. By its writ of mandamus, as we have shown, the court simply compels said boards to obey the law, and in quo warranto actions it determines the title to the office, not to whom the certificate shall issue. Elections are held to register the will of the electors, and the supreme purpose of the constitutional provision under consideration was that that will should be ascertained by bipartisan boards. In obedience to that provision the Legislature has provided for such boards and has carefully guarded the canvass required to be made by them, so as to insure, so far as that may be possible, a correct and honest canvass and return. Each political party or independent body duly filing certificates of nomination is given the right to have two watchers present at each polling place, who may require every ballot canvassed to be exhibited to them and every protested ballot to be returned as such; and if the inspectors violate the law the court upon a summary application may compel by mandamus obedience to the law. See sections 101 to 114, General Election Law (Laws 1896, pp. 950–966, c. 909) and Hasbrouck v. Board of Supervisors, supra. Would it satisfy the Constitution to have a bipartisan board go through the farce of counting the ballots and then at once destroy their statement of canvass and hand the ballots over to the representatives of a single party, upon whose canvass a certificate of election should issue? Is the Constitution less offended if this be done, not immediately, but 20 months after the election, when no one may know what changes have occurred in the ballots meanwhile? If the act under review is valid, the Legislature could provide by general law that immediately upon the closing of the polls the ballots should be delivered to the Supreme Court to be canvassed in the manner provided by this act, because what may be done 20 months after election, as a substitute for what the election boards have done, could certainly be done in the first instance; and, if this may be done by the Supreme Court, it may be done by any board or officer. And even though it be possible to infer from this act that the Legislature intended the court to discharge some judicial function preliminary to making the canvass, and though we hold that the mere ruling upon disputed ballots precisely as inspectors of election have to rule is a judicial function, still the fact remains that the real purpose of the act is to have a canvass made de novo, and to nullify the canvass already made without any review

thereof. Whether the canvassing of ballots be a judicial function or not, the Constitution has provided how the board must be constituted which discharges that function, and that requirement cannot be satisfied without giving some effect to the canvass made by such board, though, of course, it need not be conclusive. It may be attacked in a quo warranto action, or in the summary proceedings provided in many jurisdictions as a substitute for quo warranto; but it stands until attacked, and then is prima facie evidence. If such canvass were a judicial function, it could undoubtedly be reviewed by certiorari, unless the Legislature made it final, but, being administrative and ministerial, may be inquired into in mandamus proceedings and corrections compelled, as already shown. If the Constitution is to be heeded, the returns of the constitutional boards must stand, subject, of course, to correction as stated supra, until overcome by proof in some appropriate action or proceeding to try the title to the office. The petition before the court below does not allege, and the act does not require that it should allege, that there is any genuine dispute respecting the correctness of the canvass made by the returning boards. It is not asserted that a single error has been made by a single officer in a single district (as hereinbefore shown, the election law provides a summary way of compelling the correction of such errors by mandamus), and the presumption is that these officers have obeyed the law; but, upon the mere chance that another board might canvass the ballots differently, a substitutionary, not corrective, canvass is to be made. If the Legislature had provided a summary way of determining a disputed title to an office, or if the canvass required by this act had been required as an incident to a quo warranto action or some other appropriate judicial action or proceeding, and not as a mere substitute for the canvass made by the constitutional board, a different question would be presented. It seems to me little short of ridiculous to argue that what we all agree would otherwise be an unconstitutional act is valid because the duties created by it are imposed upon the Supreme Court; for to my mind the mere accident that the court was selected to do the work of inspectors of election only affects the question to the extent of aggravating the offense, and an unconstitutional act cannot be made constitutional by the requirement that the Supreme Court shall execute it.

Since writing the foregoing I have read the opinion of my Brother GAYNOR, and find that every proposition upon which I base my conclusion is regarded by him as indisputable—i. e.: (a) That a substitutionary recanvass and recount by a board not composed as article 2, § 6, of the Constitution requires, violates that provision; (b) that the canvassing and counting of votes by election officers is a ministerial duty; (c) that a ministerial duty does not become judicial by calling it so or by imposing it upon the courts; (d) that a statute providing simply for a recanvass and certification of result by the Supreme Court would be unconstitutional; (e) that the court is limited by this act to an inspection of the ballots. He reaches a different conclusion by assuming that the act provides for a judicial hearing and determination of an election contest. If it were possible to read into the act any such purpose, I would agree with him. Surely the fact that the candidates

are to be entitled to notice of the canvass and to be represented thereat by counsel does not make such canvass a judicial hearing. They are entitled to be represented by watchers at the canvass by the election officers, as shown supra. The Supreme Court cannot be required to perform ministerial acts which belong to executive or administrative officers, upon the assertion that there is a dispute involved. It cannot be called upon to settle disputes, except in a judicial way, in some judicial action or proceeding. A dispute is involved in every election; but the Constitution has said that that dispute, so far as it involves the possession of a certificate of election, must be settled by boards constituted in a particular manner, and the only way the Supreme Court can take cognizance thereof is by the issuance of its writ of mandamus to compel such boards to obey the law. The dispute which presents a judicial question for determination in a judicial action or proceeding is the dispute over the title to the office. The trial of that question may involve one or many issues; i. e., the correctness of the canvass, the regularity of the election proceedings, fraud, and the like, and, however few issues may be presented by the pleadings or tried by the court, the judgment of the court will forever settle all. But because only the single issue of the correctness of the count may be involved, and because in the trial of that issue the court will examine ballots for the purpose of pronouncing a judgment settling the judicial question of the title to the office, it by no means follows that a proceeding is valid which limits the court to the performance of the ministerial duty of canvassing ballots for the sole purpose of performing an act which the Constitution has committed to a bipartisan board.

I do not discuss the cases in which statutes providing for summary trials of election contests were considered, for none of them have the slightest application to the question here. While the New Jersey cases, cited supra, do not directly bear upon the constitutional question before us, as that was not involved, they do not bear directly upon the proposition that this act does not provide for a judicial proceeding, and are particularly applicable for the reason that the judicial question, which it was thought in those cases could only be decided by the Legislature, is by express words in this act reserved for determination in a proceeding in the courts. If this act provides a judicial review of a prior canvass, it is anomalous, in that the court cannot judicially know what it is to review. If it provides a judicial trial of an election contest for a certificate of election, as it is said to, assuming for the moment that such a contest can involve anything but administrative work, or that the court can be intruded into it further than to compel the proper performance of such work, then the anomaly is presented of a judicial trial in which the court does merely ministerial work and an adminstrative board decides what the judgment shall be. If there can be any doubt that this act is unconstitutional, it should be upheld. Ordinarily my respect for the opinions of my Brothers, with whom I differ, would create such doubt. But the idea that anything can be spelled out of, or read into, this act, having the faintest semblance to a judicial proceeding, seems to me fanciful, and I therefore dissent from the decision about to be rendered.

I add that I fully concur in the opinion of my Brother JENKS.