In the Matter of the Application of HERMAN A. METZ, as
Comptroller of the City of New York, Individually and
as a Taxpayer Therein, et al., Appellants, for a Writ of
Prohibition against SAMUEL T. MADDOX, as Justice of the
Supreme Court, et al., Respondents.

In the Matter of the Application of HERMAN A. METZ, as
Comptroller of the City of New York, Individually and
as a Taxpayer Therein, et al., Appellants, for a Writ of
Prohibition against CHARLES W. DAYTON, as Justice of the
Supreme Court, et al., Respondents.

1. CONSTITUTIONAL LAW — INVALIDITY OF ACT PROVIDING FOR
RECOUNT OF VOTES CAST FOR OFFICE OF MAYOR OF NEW YORK CITY.
Chapter 538 of the Laws of 1907, providing for a judicial recount and
recanvass of the votes cast for the office of mayor at the election of the
7th of November, 1905, in all cities of the first class in which the ballots
have been preserved, is unconstitutional, in that the proceeding author-
ized is either a recanvass of the votes cast for the office of mayor or is a
judicial hearing and determination of the title of the respective candidates
for that office; if a recanvass, it contravenes section 6 of article 2 of the
Constitution, providing for a recanvass by a bi-partisan board, which a
court is not; if a judicial determination of the title to office, it contravenes
section 2 of article 1 of the Constitution, providing for a trial by jury "in
all cases in which it has heretofore been used," of which an action of quo
warranto was one.

2. LEGISLATURE HAS NO POWER AFTER DETERMINATION OF ELECTION
TO ALTER RESULT. Where a canvass has been concluded under the
statutory provisions for its conduct existing at the time the legislature
cannot create a new tribunal with power to recanvass the election and to
award possession of the office to another claimant.

*Matter of Metz* v. *Maddox*, 121 App. Div. 147, reversed.

*People ex rel. Metz* v. *Dayton*, 120 App. Div. 814, reversed.

(Argued October 9, 1907;  decided November 19, 1907.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
July 16, 1907, which denied a writ of prohibition in the first
above-entitled proceeding.

Appeal from an order of the Appellate Division of the

Supreme Court in the first judicial department, entered July 27, 1907, which denied a writ of prohibition in the second above-entitled proceeding.

The facts, so far as material, are stated in the opinion.

*Francis K. Pendleton, Corporation Counsel* ( *William B. Crowell* and *Francis Martin* of counsel), for Herman A. Metz, as comptroller of the city of New York, et al., appellants. The act now under consideration is unconstitutional in that it violates section 6 of article 2 of the Constitution in that it provides for a counting of all or part of the ballots by a commissioner or commissioners appointed by the Supreme Court instead of a board of officers appointed or elected so as to secure equal representation from the two political parties which registered the highest and next highest number of votes at the general election next preceding that of the 7th of November, 1905. (Const. of N. Y. art. 2, § 6.)

*Eugene Lamb Richards, Jr.,* for George B. McClellan, appellant. Chapter 538, Laws of 1907, violates section 2 of article 1 of the Constitution of the state of New York, in that it deprives George B. McClellan of a right to a jury trial in the quo warranto proceeding now pending and undetermined, and precludes the Supreme Court in such quo warranto proceeding from exercising its functions in regard to the ballots canvassed under this new law. The said act is further unconstitutional in that it provides for a proceeding similar to quo warranto, but without a jury trial, to try the title to an office. (Const. of N. Y. art. 1, § 2 ; *Palmer* v. *Foley,* 45 How. Pr. 104; *Morris* v. *Whelan,* 64 How. Pr. 109 ; *City of Buffalo* v. *McKay,* 15 Hun, 204 ; *People ex rel. Wren* v. *Goetting,* 133 N. Y. 569 ; *People ex rel. Lewis* v. *Brush,* 146 N. Y. 60 ; *People ex rel. McLaughlin* v. *Commissioners,* 174 N. Y. 450 ; *Green* v. *Knox,* 175 N. Y. 432 ; *People ex rel. Kelly* v. *Common Council,* 77 N. Y. 503 ; *People ex rel. Martin* v. *McCullough,* 11 Abb. [N. S.] 129 ; *Williamson* v. *Lane,* 52 Tex. 335 ; *Rex* v. *Bennett,* 1 Strange, 101.) The act by its

express terms substitutes legislative fiat for judicial determination on the most important issue in the action in quo warranto. (*People* v. *Livingston*, 79 N. Y. 279; *People* v. *Bd. Suprs.*, 70 N. Y. 234; *Stuart* v. *Palmer*, 74 N. Y. 191; *Gillman* v. *Tucker*, 128 N. Y. 190; *Colon* v. *Lisk*, 153 N. Y. 194.)

*Clarence J. Shearn* for respondents. The act does not violate section 6 of article 2 of the Constitution requiring bi-partisan boards for counting votes at elections. (*Bd. of Comrs.* v. *Moore*, 161 Ind. 426; *Matter of Leich*, 31 Misc. Rep. 671; *State* v. *Bates*, 96 Minn. 110; *Matter of Cooper*, 22 N. Y. 84; *Zanesville* v. *Z. T. Co.*, 64 Ohio, 67; *People* v. *Hall*, 169 N. Y. 195.) The act is within the legislative powers vested in the senate and assembly. (*Koch* v. *Mayer*, 152 N. Y. 72; *People* v. *Flanagan*, 66 N. Y. 237.) There is no force in the contention that the act deprives McClellan of the right to trial by jury. (*Freeman* v. *State*, 72 Ga. 812; *State* v. *Lewis*, 51 Conn. 113; *Ford* v. *Wright*, 13 Minn. 518; *Ewing* v. *Filley*, 43 Penn. St. 384; *State* v. *Johnson*, 26 Ark. 281; *Conger* v. *Convery*, 52 N. J. L., 417.)

CULLEN, Ch. J. At the general election held in November, 1905, the office of mayor of the city of New York was to be filled. The two leading candidates for that office were George B. McClellan and William R. Hearst. After the canvass of the votes a certificate of election was duly issued by the board of elections of the city of New York to George B. McClellan, and on the first of January following he entered into possession of the office under said certificate and has held it ever since. The contest for the office was comparatively close, there having been nearly 600,000 votes cast, and the majority returned for McClellan being about 3,400. Question was raised as to the fairness of the election and the accuracy of the result certified. In 1906 an application was made by Mr. Hearst to the then attorney-general for the commencement of an action in the nature of quo warranto to test

the title of McClellan to his office. This application was denied. In 1907, a new attorney-general having been elected, the application was renewed and a suit brought against McClellan, which is now pending. On the eighteenth day of June, 1907, there was enacted by the legislature and approved by the governor a statute (Laws 1907, ch. 538), the validity of which is the subject of this controversy. It is entitled "An act to provide for a judicial recount and recanvass of the votes cast for the office of mayor at the election of the seventh of November, nineteen hundred and five, in all cities of the first class in which the ballots have been preserved," and will be given in detail hereafter. It is sufficient at this point to say that the act provided for a recanvass of the votes on the petition of any candidate for said office. In June Mr. Hearst presented his petition to a Special Term of the Supreme Court in the second judicial department for a recanvass of the votes under the terms of the statute, and a few days thereafter a similar petition to the Supreme Court in the first judicial department. The justices to whom such applications were made proceeded to conduct a recanvass of the votes, whereupon the present appellants, the comptroller and other officers of the city of New York, and McClellan individually, applied to the Appellate Divisions of the two departments for writs of prohibition restraining the Special Term of the Supreme Court from proceeding on said petition on the ground that the statute was unconstitutional and void. On the return of the alternative writs the controversy was submitted to the courts. The Appellate Division of the second department first reached a decision and upheld the validity of the statute by a divided court. The learned justices of the Appellate Division of the first department were unanimously of opinion that the statute was unconstitutional, but deemed it proper to follow the decision of the second department, earlier made, without regard to their own judgment. Orders were entered in each department denying the writ. From these orders appeals have been taken to this court. No objection is made before us as to the procedure

adopted by the appellants, and the sole question before us to be determined is whether said statute of 1907 is in contravention of the provisions of the Constitution.

The statute reads as follows: "Section 1. Upon the petition, within twenty days after the passage of this act, of any candidate for the office of mayor voted for at the election of the seventh of November, nineteen hundred and five, in any city of the first class in which the ballots have been preserved and upon such notice as the court shall prescribe, the supreme court, in any judicial district, within which any of the election districts affected are situated, must proceed to a summary canvass of the vote in any election district specified in the petition. The court shall, in such a proceeding, make an order, a copy of which shall be served upon each candidate voted for at such election, that all the requisite ballots shall be produced in the county court house and canvassed in the presence of all candidates affected, or the counsel of such candidates as shall have appeared in the proceeding, and of an attorney who shall be appointed by the court and designated in the order as commissioner. The commissioner shall canvass the ballots one by one, permitting the counsel for the candidates affected to examine them. If counsel differ from the commissioner as to the counting of any ballot, it shall be at once placed on one side as a disputed ballot. At the conclusion of the canvass of the vote in each election district, the commissioner shall prepare a written statement of the count upon the undisputed ballots, and that statement, together with all the disputed ballots, shall be submitted to the court. The court shall thereupon proceed to canvass the disputed ballots and shall rule upon each ballot in turn. If exception is taken to any ruling, the court must endorse its ruling and the exception upon the back of the ballot in ink. At the conclusion of the canvass the court shall make, in triplicate, a final order for each election district specified in the petition, which shall contain a complete return of the vote under review. One of these orders shall be filed in each office where the returns of the election officers

have been filed, which returns it shall in all respects supersede. A summary appeal may be taken to the appellate division from any such final order within ten days after it is made. Upon such an appeal, beside the order of the court below, only the ballots as to which exception was taken in the court below shall be produced, and the appellate division shall proceed to canvass them in a summary way. The appellate division shall make, in triplicate, a final order for each election district which shall contain a complete return of the vote then under review. One of these orders shall be filed in each office where the returns of the election officers have been filed, which returns and the order of the court below it shall in all respects supersede. No appeal shall be taken from any such order of the appellate division.

"§ 2. Within ten days after filing the order or orders containing a return of the vote under review, or, if an appeal therefrom has been taken, then, within ten days after filing the final order or orders of the appellate division, the board or officer authorized to issue certificates of election must prepare from said orders and from the returns not then superseded a tabulated statement showing the total number of votes cast for each candidate for the office of mayor at the election aforesaid, which tabulated statement, certified by the board or officer aforesaid, shall be filed in the office of the said board or officer. Thereupon and within three days the said board or officer shall issue and deliver a certificate of his election to the candidate shown to have received the greatest number of votes for the office of mayor, which certificate shall, in all respects, if it shall change the previously declared result of the election, supersede the certificate theretofore issued by the said board or officer. Upon receipt of such new certificate, the candidate certified therein to have been elected shall forthwith take office, be invested with the powers and perform the duties appertaining to such office. Any justice of the supreme court may make such summary order or entertain such proceedings as may be necessary to carry said recount into effect and secure to the candidate

shown by said recount to have been elected, full possession of the office of mayor and the exclusive right to exercise the functions of said office.

" § 3. Nothing in this act contained shall impair or affect any right under the constitution or laws of this state to question, by proceeding in the courts, the right or title of the candidate who shall, as a result of said recount, be declared elected ; but there shall be no judicial review of any ballots which shall have been canvassed in the proceedings herein authorized."

The remainder of the statute provides for the validity of the acts of the incumbent of the office until the issue of the new certificate, if that changes the result, and for defraying the expenses and costs of the proceeding, provisions that are not material to our discussion of the case.

The constitutionality of the statute before us has been attacked on many grounds.   Some of the objections presented to it are frivolous and need no consideration.   There are some others which raise questions fairly debatable and might be difficult to answer.   All of these, however, we do not intend to review, as we think the statute so clearly contravenes the Constitution in one of two respects as to render it unquestionably invalid.   The proceeding authorized by the statute either is, as its title indicates, a recanvass of the votes cast for the office of mayor, or is a judicial hearing and determination of the title of the respective candidates at that election to the office of mayor.   Elaborate discussion is to be found in the briefs of the opposing counsel and in the opinions of the learned judges of the courts below as to which of these two is the real character of the proceeding.   Neither at this point nor, indeed, at all, is it necessary to definitely determine which is the true character of the proceeding.   If it is a recanvass it contravenes section 6, article II of the Constitution, which provides : " All laws creating, regulating or affecting boards of officers charged with the duty of registering voters, or of distributing ballots at the polls to voters, or of receiving, recording or *counting votes at elections,* shall

secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes." If, on the other hand, it is a judicial determination of the title to office it contravenes section 2, article I of the Constitution, which provides: "The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever." That the courts by whom the recanvass is to be made are not bi-partisan bodies is apparent, and that the statute provides for no determination by a jury of the disputed issues of fact is equally clear. Here we may well rest, and it is necessary to consider only the arguments adduced to withdraw the statute from both these constitutional limitations.

It is urged by the counsel for the respondents that there has prevailed in this state for some years a certain measure of review exercised by the courts over the action of canvassers and that the validity of the Election Law authorizing such review has never been challenged. The statement is entirely correct. Nor do we think that the validity of the legislation can be successfully challenged. But the recanvass authorized by this statute is of a far different character. Under the General Election Law ballots not marked in accordance with the statutory provisions are void and the canvassers do not count them. Ballots protested by either party as marked for identification are counted. The void ballots and the protested ballots are not returned to the box but inclosed in envelopes and deposited in the clerk's office. Either party may appeal to the courts to review the action of the canvassers in holding any ballot void or to have any of the protested ballots thrown out as marked for identification. This review presents for determination only questions of law arising on the face of the ballots. Boards of canvassers have never been wholly exempt from judicial control. There has been no time in the history of the state when mandamus would not lie to compel a board of canvassers to do its duty, but at no time have the courts had power to compel the board

of canvassers to certify the result of their canvass by specifying any particular number of votes as cast for one party or the other. In other words, the actual count and determination of the result of the count of the ballots has always been the exclusive province of the board of canvassers, subject to review in but one proceeding known to the law, quo warranto. Of course, the officers making a false count could be punished for their crime. Their false determination was no protection to them. Now it was the count, in which at all times there has been the greatest danger of fraud, that the Constitution intended to safeguard, and the people by the Constitution determined that the best way to safeguard the count was to require it to be made by a bi-partisan board. The most cursory examination of the present statute will show how widely the scheme provided by it differs from any review or control the courts have ever exercised over a board of canvassers. By this statute an absolutely new canvass is to be made, proceeding from the very initial step, that of counting the votes in the boxes. The title of the statute well describes the proceeding as a "recount and recanvass." The effect of the proceeding is or may be to give a certificate of election to another person than him whom the original canvass showed to be elected. The legislature can no more authorize a recount and recanvass by other than a bi-partisan board, the result to act as a substitute for that of the original canvass, than it can authorize a count and canvass to be made in the first instance by other than a bi-partisan board. Of course, this statement is made on the assumption that the title of the statute accurately characterizes the proceeding therein described, and that it does not provide for a judicial determination of the title to office, in which latter aspect we will now proceed to consider the validity of the act.

There are serious difficulties in treating the proceeding as one to determine the title to office. What does the statute direct the court to do after the receipt of the petition? There is no provision for any answer to the petition, nor if its allegations be denied for any hearing on the issues raised by such

denial.  There is no provision for the examination of witnesses as to the identity of the ballots and their preservation, nor on any other question of fact that might arise.  Still, it is possible that the proceeding being before a court we should construe the statute as implying that questions of fact arising in the proceeding should be disposed of in the ordinary manner prevailing in judicial trials, and it is very probable that we should consider it our duty to so construe the statute were it otherwise valid.  But the fatal objection to the constitutionality of the statute, regarded from this point of view, is that it deprives McClellan of his right to a trial by jury. The constitutional provision that the right of trial by jury in cases where such mode of trial had hitherto prevailed is found in every Constitution of the state that the people have at any time adopted.  On a recent appeal to this court (*Malone* v. *St. Peter's & St. Paul's Church*, 172 N. Y. 269) to determine whether a certain character of action was referable or not, it was necessary for us to examine the state of the law prior to the Revolution to see if at that time the party had an absolute right to a trial by jury, for if he had the right was still extant. That actions to determine the title to public office were always, in this state and in England before our independence, triable before a jury is common knowledge.  (*People* v. *Albany & Susquehanna R. R. Co.*, 57 N. Y. 161.)  The Revised Statutes of 1830 declared that issues of fact on a writ of quo warranto should be tried in the same manner as in personal actions, *i. e.*, by a jury; both the Code of 1847 and the Code of Civil Procedure of 1877 expressly enumerate the action as triable before a jury.  The special proceeding for the delivery of books and papers of an office does not violate this provision. In such a proceeding the court merely deals with the *prima facie* title of the applicant.  It cannot go behind the certificate of election.  It is plain that the contest for the present office will largely, if not principally, present questions of fact. The count of the votes now in one of the boxes may differ radically from the vote returned by the canvassers.  The proof given may tend to show that the box has been preserved

inviolate and, therefore, justify the admission of its contents in evidence. On the other hand, there may be evidence tending to show that the box was or could have been tampered with, and there may also be the testimony of the election inspectors and canvassers that on the night of the election the ballots in the box were exactly as returned by them in their statement of the count. The vital issue will then be what was the true count of the ballots on election night, and the exclusive determination of that question will belong to a jury. To have it so determined is the appellant McClellan's constitutional right.

The learned justice who wrote for the majority of the second Appellate Division thus answers the claim of McClellan to a jury trial: "If trial by jury were used in actions of quo warranto at the time of the adoption of our Constitution, that secures that form of trial in such action or in any form of action or proceeding substituted for it (*People* v. *Albany & Susquehanna R. R. Co.*, 57 N. Y. 161). But under the common law and by statute such an action could only be brought by the sovereign. A contestant for an office could not bring any action or proceeding to oust the incumbent, or try the right to the office; and that has remained the case in this State down to the present time. In creating a new action or proceeding — one that did not exist when the Constitution was adopted — for the trial of disputes of contestants of an election of (at?) the suit of a contestant, the Legislature is free to make it summary or by jury trial. That has been generally held throughout the country, as appears by the decisions of other States, cited in the foregoing." The error of this reasoning lies just here: The learned justice has overlooked the difference between the situation of the contestant for an office and that of the incumbent of an office. As the learned judge writes, the title to an office could be challenged only by the sovereign, in this country the people, and it is a matter of grace on the part of the people or their legal representative to allow a suit to be brought on the relation of the contestant. Therefore, as a contestant has no constitutional right to bring

an action it may be argued that he can have no right to have the trial of the action in any particular manner. Assuming the correctness of this proposition, it would be a perfect answer to any attack on the validity of the statute that the contestant might make, but we are at a loss to perceive its application to the case of the incumbent. McClellan was in office under a certificate of election entitling him thereto. In the only judicial proceeding known to the law, or that ever prevailed in the state, through which he could be ousted from office, he was entitled to a jury trial on the issues of fact. As is well said by the learned justice below in the excerpt already quoted: "If trial by jury were used in actions of quo warranto at the time of the adoption of our Constitution, that secures that form of trial in such action or in any form of action or proceeding substituted for it." Giving the present statute the fullest force and effect as authorizing a judicial proceeding, the most that can be said of it is that it is a "proceeding substituted for" quo warranto.

The learned counsel for the respondents relies on the provision of that portion of the third section of the act already quoted to relieve the statute from the objection of failure to provide for a jury trial: "Nothing in this act contained shall impair or affect any right under the constitution or laws of this state to question, by proceeding in the courts, the right or title of the candidate who shall, as a result of said recount, be declared elected; but there shall be no judicial review of any ballots which shall have been canvassed in the proceedings herein authorized." He urges that this leaves unimpaired the constitutional right of the incumbent to assert his title to office. If, however, there is to be no judicial review "of any ballots which shall have been canvassed in the proceedings" it is difficult to see that there is much left open to litigation in the quo warranto suit. True, if McClellan's eligibility to office, his residence, his age, his citizenship, were challenged, these matters would be open to litigation; but they are not challenged and the real issue in the case, the question who got the most votes at the election, will be foreclosed by the determi-

nation on the judicial recount. The learned counsel appreciates this and to obviate the difficulties suggests that to uphold the statute the court should strike therefrom the provision that there shall be no further judicial review of the ballots, under the well-known rule that if a part of a statute is valid and part is invalid, if the parts are separable, the valid part may be upheld though the invalid part be declared void. To make the elimination suggested would be to thoroughly emasculate the statute. If, however, we accede to the counsel's contention what will be the result? The essence of a judicial proceeding is that it decides something and that its decision is conclusive on the parties. If we eliminate the provision that there shall be no judicial review of the ballots, it seems to us clear that the proceeding authorized by the statute is reduced to a mere canvass, pure and simple, and it at once runs counter to the constitutional provision for bi-partisan boards. The only result of the proceeding would be a new canvass and a new certificate of election did the recanvass differ from the original.

Now, at this point it becomes necessary to state an objection that we have to the constitutionality of this statute that goes beyond any that we have discussed. The results of the election were canvassed and determined under the provisions of law then existing, and a certificate of election given to McClellan which conferred *prima facie* title to office, and under which he entered into the office of mayor. In this state *prima facie* title to elective office has always been conferred by certificates of election according to the results canvassed, and conclusive title has been the subject of determination by judicial proceedings. The incumbent holding the *prima facie* evidence of title has never been subject to be ousted in any other manner than by legal proceedings, members of the legislature alone excepted. It is true that the appellant McClellan has no property right in his office nor in the incumbency of his office during the term for which he was elected. In theory of law he holds the office for the benefit of the public, not for his own. It is possible that the office may now be

considered a constitutional one, for it is recognized in article XII, section 2, of the Constitution of 1895; but whether considered a constitutional office or not, it is and has always been a local office which, under the Constitution of 1846 and that of 1895, must be filled by election by the people or by appointment from local officers. It is not within the power of the legislature to have it filled in any other manner. It is true that no term is prescribed for the office by the Constitution, and that the present incumbent might be legislated out of office by an act of the legislature changing the official term (*People ex rel. Devery* v. *Coler*, 173 N. Y. 103); but no other man can be legislated into office. As long as his official term has not been reduced by legislation the appellant McClellan is entitled to hold the office until he is ousted as the result of a judicial determination, or is removed for misconduct. A canvass having been concluded under the statutory provisions for its conduct existing at the time, the legislature has no power to create a new tribunal with power to recanvass the election and to award possession of the office to another claimant. If such were its power the legislature might, except for the bi-partisan provision first found in the Constitution of 1895, equally conduct the recanvass and make the determination itself. The result of such a doctrine would be appalling. Where the result of an election had been adverse to the party to which a majority of its members belonged, the legislature might by a subsequent statute authorize a recanvass of the election of the governor, of the judges of the courts, of the state officers and of the presidential electors, who, in this state, are elected by the people. We hold that no such power exists. Of course the legislature may alter the form of judicial proceedings to try the title to office, making it as summary as possible, provided it retains the right of trial by jury, but we are speaking of a mere recanvass as distinguished from judicial proceedings.

It is unfortunate that the election in New York was so close as to leave doubts in many minds as to the accuracy of the result declared. The whole question, however, can be

tried and determined in the quo warranto suit now pending, and in that suit everything that is authorized or directed by the statute before us, opening the boxes, recount and the like, can be had, and it is not apparent why a determination cannot be as speedily reached in that action as by the proceedings authorized by this statute. It is also unfortunate that dilatory objections to the prosecution of that suit have apparently met with some success in the courts, but it would be far more unfortunate if, moved by any considerations of that character, or by the entirely natural desire of the electors of the city of New York to learn whether the result of the election of mayor was honestly and accurately declared, we should not only shut our eyes to plain constitutional provisions, but uphold the validity of a practice which might lead to infinite mischief in the future.

The order appealed from should be reversed and the writ of prohibition issue in each case, with costs to the appellants in both courts, but in one proceeding only.

O'BRIEN, EDWARD T. BARTLETT, HAIGHT, VANN, HISCOCK and CHASE, JJ., concur.

Order reversed, etc.