I am unable, however, to find that upon the proceedings had after the defendant was pronounced guilty and before sentence, she received any notice whatever that those proceedings were being had under the provisions of the statute to determine whether or not she should receive an increased punishment as a second offender. She was removed to have her finger prints taken without such notice. If she had received such notice it might well be that she would have refused to allow the taking of the finger prints, on the ground that by their taking she would be compelled to furnish evidence against herself upon the trial of the issue of her prior convictions. As it was she may have supposed that her finger prints were being taken merely for the purposes provided by law before the enactment of the Parole Board Act. When she was brought back after the finger prints had been taken, she received no such notice. If she had she might not have made the concession of her convictions upon the record, but might have insisted upon those convictions being proved by competent evidence. In my opinion, therefore, she was not accorded due process of law upon the proceedings to determine whether or not she was a second offender.

The judgment, therefore, must be modified by the imposition of a definite sentence. As it appears by the defendant's prior record that she has been frequently convicted and has been accorded the benefits of reformatory treatment, without avail, the defendant is sentenced to a definite sentence of six months in the workhouse, sentence to take effect from the date of her conviction, namely, February 14, 1916. The judgment, as so modified, is affirmed.

Judgment modified and affirmed.

---

(96 Misc. Rep. 141)

### In re SPINGARN'S ESTATE.

(Surrogate's Court, New York County. June 8, 1916.)

1. EVIDENCE ⟳29—JUDICIAL NOTICE—AMENDMENT TO LAW.

The surrogate, as a judge of a court of record, is bound to be aware of an amendment to a provision of the Tax Law involved in a transfer tax proceeding.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 43-46, 48; Dec. Dig. ⟳29.]

2. TAXATION ⟳898—TRANSFER TAX—JURISDICTION OF SURROGATE—CONTINGENT MATTERS.

Under Tax Law (Consol. Laws, c. 60) § 230, as amended by Laws 1911, c. 800, providing that the surrogate shall assess a tax upon the value of property as of the date of the decedent's death, and, if it is transferred in trust, to assess a tax upon such transfer at the highest rate which upon the happening of any of the contingencies upon which the trust estate is limited, would be possible, and to modify such order fixing the tax when the contingencies upon which the trust estate is limited have happened, and section 231, providing that from the appraiser's report the surrogate shall forthwith as of course determine the cash value of all estates and the amount of taxes to which they are liable, the surrogate cannot determine what the taxes upon the interest of legatees may be if certain events, upon the happening of which contingent estates are limited, or upon which defeasible estates may be divested, shall occur at a particular

time, as such a determination, if made, would be speculative, and not judicial.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. ☜898.]

3. CONSTITUTIONAL LAW ☜56—JUDGES ☜24—TRANSFER TAX PROCEEDING —SURROGATES—DUTIES IMPOSED—POWER OF LEGISLATURE.

The surrogate, as a judicial officer, cannot be compelled to perform acts extrajudicial or ministerial in character, such as including in an order assessing a tax upon the estate of a decedent a hypothetical calculation for the benefit of the comptroller; nor can the Legislature impose any new ministerial duties on the surrogate.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 62–65; Dec. Dig. ☜56; Judges, Cent. Dig. §§ 91–98; Dec. Dig. ☜24.]

4. JUDGES ☜1—SURROGATE—"JUDICIAL OFFICER."

A surrogate is a "judicial officer" of the state, being expressly so classified by General Construction Law (Consol. Laws, c. 22) § 26, and inferentially by the Legislature defining his jurisdiction as a judge.

[Ed. Note.—For other cases, see Judges, Cent. Dig. § 1; Dec. Dig. ☜1.

For other definitions, see Words and Phrases, First and Second Series, Judicial Officer.]

5. COURTS ☜198—COURTS OF RECORD—SURROGATE'S COURT.

Under the express provision of Judiciary Law (Consol. Laws, c. 30) § 2, the Surrogate's Court is a court of record.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 469, 471–475, 478; Dec. Dig. ☜198.]

6. JUDGES ☜24—ACTION—MINISTERIAL ACT.

A judge cannot be compelled to do a ministerial act; and no adjudication, not absolutely essential to the disposition of an issue in a special proceeding or litigation, is a judicial act or duty.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 91–98; Dec. Dig. ☜24.]

7. ACTION ☜6—CONTINGENT RIGHTS.

A court will not declare the rights of parties upon a state of facts which has not yet arisen, nor upon a matter which is future, contingent, and uncertain.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 40; Dec. Dig. ☜6.]

8. STATUTES ☜218—CONTEMPORANEOUS CONSTRUCTION.

The contemporaneous compliance of other surrogates with the comptroller's request to make hypothetical judgments based on contingencies is of no weight as a contemporary construction of the law, as a compliance is not a construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 294, 295; Dec. Dig. ☜218.]

9. MANDAMUS ☜60—JUDICIAL OFFICERS—SURROGATE.

The proper mode to test the validity of the surrogate's noncompliance with the state comptroller's request to amend an order in a transfer tax proceeding by inserting a clause is by an alternative mandamus, directing him to perform the alleged duty, or to show good cause.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 70, 71; Dec. Dig. ☜60.]

In the matter of the transfer tax upon the estate of Samuel H. Spingarn, deceased. Application by the state comptroller to resettle an order entered upon the decision rendered on an appeal taken by him from an order assessing a tax upon the estate of the decedent. Application denied. .

Lafayette B. Gleason, of New York City (Schuyler C. Carlton, of New York City, of counsel), for state comptroller.

Arthur B. Spingarn, of New York City, for executor.

Emanuel S. Cahn, of New York City, for executrix.

FOWLER, S. This is an application by the state comptroller to resettle an order entered upon a decision rendered on an appeal taken by him from an order assessing a tax upon the estate of the decedent. The order as entered assessed a tax upon the interests of the legatees in accordance with the provisions of the Tax Law in force at the date of decedent's death and the decision of the Court of Appeals in the Matter of Zborowski, 213 N. Y. 109, 107 N. E. 44. The state comptroller now asks that the order be resettled so as to include the following clause:

"Ordered and adjudged that of the tax above assessed against the executors and trustees for the benefit of the 5 per cent. class, the tax upon such remainder or remainders which would be due if the contingencies or conditions had happened at the date of the appraisal of the estate is $2,482.05."

The clause in question expresses no finding ever made by the surrogate and no such calculation as therein contained has ever been entered on by the surrogate. I may add that he does not propose to make such calculation. The declared purpose of resettling the order in this way is to review my decision in Matter of Valentine, 88 Misc. Rep. 397, 150 N. Y. Supp. 733. The proposed clause in the order submitted is so obscure and its meaning so involved that I should be inclined to deny the application upon that ground alone. But there are other more substantial objections to the application to incorporate the proposed clause in the order fixing tax. I had occasion to mention some of such objections in my decision in the Matter of Valentine, 88 Misc. Rep. 397, 150 N. Y. Supp. 733.

[1] No appeal was taken from that decision, and it stands unrevoked to this day. The state comptroller contends, however, that at the time I rendered the decision in the Matter of Valentine my attention was not called to section 230 of the Tax Law, as amended in 1911. This is an unwarranted assumption. It was quite unnecessary to call my attention specifically to the amendment, as I was aware of it, and bound to be as a judge of a court of record.

[2] Section 230 provides that where property is transferred in trust and the rights of the transferees are dependent upon contingencies or conditions whereby they may be defeated, a tax shall be imposed upon such transfer at the highest rate which upon the happening of any of the contingencies would be possible—

"and the surrogate shall enter a temporary order determining the amount of said tax in accordance with this provision; provided, however, that on the happening of any contingency whereby the said property, * * * is transferred to a person or corporation exempt from taxation under the provisions of this article, or to any person taxable at a rate less than the rate imposed and paid, such person, or corporation shall be entitled to a return of so much of the tax imposed and paid as is the difference between the amount paid and the amount which such person or corporation should pay under the provisions of this article."

The section further provides that the executor or trustee shall, upon the happening of any of the contingencies, apply to the surrogate of the proper county for an order modifying the temporary taxing order of the surrogate so as to provide for the final assessment and determination of the tax in accordance with the ultimate transfer or devolution of the property.

The order entered herein assessed a transfer tax in accordance with the provisions of section 230, above quoted, and no application has yet been made for a modification of the order upon the ground that the property has actually vested in the possession of persons taxable at a less rate than that imposed by the order. Section 231 provides that from the report of the appraiser and any other proof relating to the estate—

"the surrogate shall forthwith, as of course, determine the cash value of all estates and the amount of tax to which the same are liable."

These are the only provisions of the statute which direct or authorize the surrogate to assess a tax, and they are confined to (1) assessing a tax upon the value of property as of the date of decedent's death, and if the property is transferred in trust, assessing a tax upon such transfer at the highest rate which upon the happening of any of the contingencies upon which the trust estate is limited, would be possible; (2) modifying such order fixing tax when the contingencies or conditions upon which the trust estate is limited have happened. There is no provision in the statute which authorizes the surrogate to determine what the tax upon the interest of legatees may be if certain events upon the happening of which contingent estates are limited, or upon which defeasible estates may be divested, shall occur at a particular time. Such a determination, if made, would be speculative, not judicial. If the convenience of the state comptroller, or the convenience of executors, requires that a calculation be made of the tax which would be assessable if the contingencies subject to which the property is transferred happened at the date of the appraisal, such calculation may be made by the state comptroller or the executor, as it does not involve a judicial determination of any question, but merely requires the application of elementary mathematical principles. It is a matter of arithmetical calculation, not a question of law.

As before stated, this whole question was decided by me in the Matter of Valentine, supra, and if the state comptroller was dissatisfied with that decision he should, I think, have appealed to the Appellate Division and then obtained a review of my decision by that tribunal. This would have been a more orderly and respectful proceeding than bringing the same question up again before me.

[3-5] This application, if regularly sub judice on a motion to resettle an order, which I deny, involves the proposition of law, that a judicial officer cannot be compelled to perform acts extrajudicial or ministerial in character. The proposition is important, not only to this court, with its vast judicial duties and responsibilities in this county, but also to the public at large. The importance of keeping separate the judicial, executive and legislative duties of officers of

government has been recognized ever since the foundation of the present form of government.

Let me explain in limine that in my judgment it is the duty of every official under our system of government, which is a government of law and exists only by and through the law, to see to it not only that he himself does not transcend the powers and duties committed to him in trust, but also that these powers are not infringed by any one. Otherwise all manner of irregularities would flourish in this country under color of office to the detriment of the public service. It is for this reason primarily, and in no disputatious or contentious spirit, that I feel it incumbent on me to resist the present application. In so resisting I have taken the only course which in my humble judgment is consistent with both the obligations of office and orderly government. The application on the part of the comptroller to compel the surrogate to insert in an order a hypothetical calculation for the benefit of the comptroller must be either pursuant to some act of the Legislature requiring it to be done by the surrogate or else not pursuant to such an act. One or other alternative must be true. If claimed to be pursuant to some act of the Legislature, then I hold that such legislative act is absolutely void, of no effect and without force.

The surrogate is a judge of a court of record and his office is now protected by the Constitution. Article 6, § 15, State Constitution, recognizes the existence of the court and perpetuates the surrogates. The Surrogate's Court is a court of record (Judiciary Law, art. 2, § 2), and the surrogate is classed among the judges of the state (General Construction Law, § 26). Under the present Constitution the Legislature can no longer enact any law abolishing the surrogate's office. My present contention is that independently of that limitation the Legislature is also powerless to impose any new ministerial duties on the surrogate, because he is a judicial officer of this state, and so classified both expressly as shown above and inferentially by the legislation defining his vast jurisdiction as a judge and providing for its execution. In Garlock v. Vandervort, for example (128 N. Y. 374, 378, 28 N. E. 599), the court expressly stated that the surrogate was a judicial officer. It would be strange were it otherwise, as under the existing law many of the judicial duties, formerly exercised by the chancellor of this state and the justices of the Supreme Court of the state, are now transferred to surrogates. The surrogates of this state, indeed, have a far more extended jurisdiction than the judges of the Probate Division of the High Court in England, and the Surrogates' Courts are recognized as of the first importance. To hold that the surrogate's is not a purely judicial office would be illogical and antithetic. There is nothing contained in Matter of McPherson, 104 N. Y. 306, 10 N. E. 685, 58 Am. Rep. 502, which derogates from the accuracy of the affirmation that the surrogate is a judge. In fact the whole assumption of the opinion in that case is that the surrogate's functions, contemplated by the Transfer Tax Laws, are to be judicial, and not administrative or executive in character. This being so, I proceed next

to the proposition that no judge of this state can be compelled to do a ministerial or extrajudicial act.

[6] A judge cannot be compelled to do a ministerial act. The principle to which I refer, as plainly violated by the present application, is well recognized. Judge Cooley states it, and of course with his usual accuracy, when he says:

"Upon judges, as such, no functions can be imposed except those of a judicial nature."

There are many adjudications to the same effect, only some of which need be cited. Note to Hayburn's Case, 2 Dall. 409, 1 L. Ed. 436; Heine v. Levee Commissioners, 19 Wall. 661, 22 L. Ed. 223. The New York cases are to the same effect. In People ex rel. McDonald v. Keeler, 99 N. Y. 463, 480, 2 N. E. 615, 52 Am. Rep. 49, the Court of Appeals said that, although the Constitution of New York does not contain a declaration similar to that of the Constitution of the United States in regard to separation of powers, the principle was recognized in this state. In Matter of Davies, 168 N. Y. 89, at page 101, 61 N. E. 118, at page 121 (56 L. R. A. 855), the court said:

"Free government consists of three departments, each with distinct and independent powers, designed to operate as a check upon those of the other two co-ordinate branches. The legislative department makes the laws, while the executive executes and the judiciary construes and applies them. Each department is confined to its own functions and can neither encroach upon nor be made subordinate to those of another without violating the fundamental principle of a republican form of government."

A recent litigation in this state, in which the doctrine that courts cannot be delegated to perform ministerial functions was recognized, is that of Matter of Metz v. Maddox. That case is reported in 121 App. Div. 147, 105 N. Y. Supp. 702 (reversed 189 N. Y. 460, 82 N. E. 507, 121 Am. St. Rep. 909). The dissenting judges in the Appellate Division, Second Department, were of the opinion that chapter 538 of the Laws of 1907, providing for a judicial recount and recanvass of the votes cast in the mayoralty election in New York on November 7, 1905, was unconstitutional, because the ministerial function was imposed upon the Supreme Court. The Court of Appeals, in sustaining the dissenting judges, did not place its conclusion upon the same ground, but held that the statute was unconstitutional for other reasons. However, the same litigation was before the Appellate Division for the First Department, under the name of People ex rel. Metz v. Dayton, 120 App. Div. 814, 105 N. Y. Supp. 809. The judges for the First Department, although they held the statute constitutional, did so purely as a matter of comity. They expressed their unanimous opinion that the statute was unconstitutional, because it devolved upon the Supreme Court purely administrative or ministerial duties. While it is intimated that there may be some distinction made between ministerial duties imposed on a court and like duties imposed on a judge, in principle there is, I think, no distinction which may be maintained.

That the duty sought to be imposed on the surrogate by the insertion of the clause in the order submitted is not a judicial act is apparent.

U. S. v. Ferreira, 13 How. 40, 14 L. Ed. 42; Rees v. City of Watertown, 19 Wall. 107, 22 L. Ed. 72. No adjudication which is not absolutely essential to the disposition of an issue in a special proceeding or a litigation is a judicial act or duty. I had occasion to consider that point generally in Matter of Kathan, 141 N. Y. Supp. at page 720, but there was no need to refer to the authorities sustaining it in Matter of Kathan, although they are many. In Washbon v. Cope, 144 N. Y. at page 295, 39 N. E. 390, the court said:

"As a general rule, the surrogate has no jurisdiction to construe the provisions of a will excepting so far as it may be necessary for him to do so in order that he may properly perform some other duty which has been imposed upon him by law. There is no general inherent power vested in him or in is court to construe devises or bequests as a distinct and independent branch of his or its jurisdiction. Even a court of equity vested with general jurisdiction over equitable subjects has no such inherent power as that, and its only power to construe the provisions of a will is based upon and is incident to its jurisdiction over trusts"—citing Mellen v. Mellen, 139 N. Y. 210, 34 N. E. 925, to the same effect.

In Re Davis, 105 App. Div. 226, 93 N. Y. Supp. 1004, the court held to the same effect, that a Surrogate's Court has no inherent power to construe the provisions of a will except in so far as it may be necessary in order that it may properly perform some other duty imposed upon it by law. The proposition, I say with deference, is exceedingly well summed up in the opinion of Judge Peckham in the case of Horton v. Cantwell, 108 N. Y. 269, 15 N. E. 554, where he says:

"Upon the whole case we think there is no practical or pressing controversy to be determined, and the contingency may never arise in which the question can become a practical one, and even then, if it do hereafter arise, there is no certainty there will be any contest whatever in regard to it. At any rate the matter is, so far as the plaintiff is concerned, a purely abstract one, and courts do not sit to determine abstract questions."

[7] But the principle on which I rely is best stated by the equity jurisprudent Pomeroy (3 Eq. Juris. § 1157):

"It is well settled that a court will never  *  *  *  declare the rights of parties upon a state of facts which has not yet arisen, nor upon a matter which is future, contingent and uncertain."

The adjudications cited by Professor Pomeroy strengthen his statement.

It is now obvious that what the comptroller seeks to accomplish is to compel the surrogate, a judicial officer, to perform a purely ministerial act based wholly on a future contingency. This cannot be done; certainly not by a motion to resettle an order. If there is any remedy for the surrogate's refusal it must be by way of mandamus. But there is, I think, no statute which compels the surrogate to enter on the calculation requested, and consequently no obligation to perform it.

[8] I next come to a point much emphasized in the brief for the comptroller, to wit, that certain other surrogates of this state have acceded to the comptroller's request to make hypothetical judgments based on contingencies. Whether this point is in furtherance of the principle of Lord Coke, "Contemporanea expositio est optima et fortissima in lege," I am not advised. It may be that that well-known

maxim is not relied on by the comptroller. Yet it is the only justification for this statement in the comptroller's brief. If the maxim is relied on and intended to be urged as of weight, then let me say that the contemporary compliance of certain other surrogates with the comptroller's request is of no weight with me as a contemporary construction of the law. A compliance is not a construction. The reason for the compliance should be regarded. Some of the learned surrogates in this state are undoubtedly in favor of widening the duties and powers of the surrogates in every direction. They would, I think, favor adding to their office the entire machinery connected with the imposition, collection and administration of the taxes known as transfer taxes or "death duties," whether such machinery is judicial in character or not. That school of surrogates would not, I am assured, object to the enlargement of the already large clerical and ministerial bureaus now connected with the surrogates' offices in the various counties. As schools of thought are to be regarded only as tendencies to a better or to a worse goal, it is sometimes necessary to analyze them. All schools of thought are, according to the pragmatists, streams which must end somewhere. If so it will not do to float on them without some regard to the ultimate destination. Had the point that many surrogates comply with the comptroller's request to enter hypothetical judgments not been thrust on me as an argument of weight I should not have felt it incumbent on me to analyze the tendencies of the school of thought with which I am not in accord. I confess that to all this ministerial kind of enlargement of the surrogate's duties and office just indicated, in so far as it is not yet expressly enacted, I am opposed, believing it to be not only contrary to the best interest of the estates of the dead, but hostile to the economic state.

But passing from this, that a judicial officer should be required to enter judgments based on hypotheses and contingencies, is, in my opinion, opposed to well settled principles of our law, and to the whole theory on which our judicial establishment rests. Certainly if the surrogates are to be enrolled among the appraisers and tax gatherers of the state, then it is inconsistent that they should sit judicially on many points of law concerning the incidence of taxation which are now submitted to them in their capacity as judges. For the reasons thus indicated, and only indicated, I am unable to assign great weight to the argument based on the alleged contemporary compliance by some of the learned surrogates of this state.

[9] The application of the comptroller must not only be denied on the merits, but also on the further ground that he has mistaken his remedy. The recognized mode to test the validity of my noncompliance with the comptroller's wishes is not by a motion to amend my order by inserting therein something which I refuse to do, but by an alternative mandamus, directing me to perform the alleged unperformed public duty or show good cause to the contrary. In this way only can the issue in question be tried and determined. But for all the reasons stated the application to resettle order should be denied, and it is denied.