In the Matter of the Application of SANDY J. ADAMS, for an Order of Peremptory Mandamus, Petitioner, *v.* DWIGHT T. CORWIN, as County Auditor of the County of Suffolk, State of New York, Respondent.

Supreme Court, Suffolk County, May, 1922.

Election Law — absentee voting — constitutional law — delegation of powers of board of elections to county clerk unconstitutional — mandamus to compel payment of salary of commissioner of election — Election Law, § 39, as amended.

The Constitution of the state (Art. II, § 6) declares: " All laws creating, regulating or affecting boards of officers charged with the duty of registering voters, or of distributing ballots at the polls to voters, or of receiving, recording or counting votes at elections, shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes. All such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the Legislature may direct," etc.

At the general election held November 4, 1919, an amendment to the Constitution (Art. II, § 1-a) was adopted which permitted absentee voting, and pursuant to said amendment chapter 875 of the Laws of 1920 was enacted and has been re-enacted into chapter 588 of the Laws of 1922 (Election Law, §§ 117, 122, 90).

Section 39 of the Election Law (Laws of 1922, chap. 588, in effect April 12, 1922) provides that in certain counties, including the county of Suffolk, the county clerk shall have the powers and duties of a board of elections as well as those of a county clerk. *Held*, that as the performance of the necessary acts to be done in connection with absentee voters by the county clerk which had been done by the board of elections would be in violation of the constitutional mandate, the purpose of which is to furnish a method of preventing corruption at the polls, section 39 of the Election Law, to the extent that it in effect abolishes the office of commissioners of election and thus permits the distribution of ballots at the polls to absentee voters, is void.

While it is true that the distribution of ballots to absentee voters is not made " at the polls," as that term is generally used, it does no violence to the use of that term to include within its scope the distribution to voters of the ballots wherever or however it may take place when the distribution is made to enable them to cast the ballots so distributed.

A peremptory writ of mandamus directing the county auditor of Suffolk county to draw a warrant in favor of relator for his salary as a member of the board of elections from April 13, 1920, to April 30, 1922, granted.

Application for peremptory writ of mandamus.

*Samuel Seabury*, for petitioner.

*Charles D. Newton*, attorney-general (*Robert P. Beyer*, of counsel), opposed.

*Nathan O. Petty*, for respondent.

Lazansky, J. Application by one Sandy J. Adams, as chairman of the board of elections of Suffolk county, for a peremptory writ of mandamus to compel Dwight T. Corwin, county auditor of Suffolk county, to draw a warrant in favor of the said Adams for his salary as a member of the elections board from April 13, 1920, to April 30, 1922. The question involved is whether or not section 39 of the Election Law (Laws of 1922, chap. 588, effective April 12, 1922) is unconstitutional in that it provides that in certain counties, including the county of Suffolk, the county clerk shall have the powers and duties of a board of elections as well as those of a county clerk. The effect of this act is to abolish the office of commissioners of election in Suffolk county. The only point made is that the performance of the necessary acts to be done in connection with absentee voters by the county clerk which had been done by the board of elections, would be in violation of article II, section 6, of the State Constitution, which provides: " All laws creating, regulating or affecting boards or officers charged with the duty of registering voters, or of distributing ballots at the polls to voters, or of receiving, recording or counting votes at election, shall secure equal representation of the two political parties which, at the general election next preceding that for which

such boards or officers are to serve, cast the highest and the next highest number of votes. All such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the Legislature may direct. Existing laws on this subject shall continue until the Legislature shall otherwise provide. This section shall not apply to town meetings, or to village elections."

It is urged that under the provisions of law relative to absentee voting, the person or persons having charge thereof distributes ballots at the polls to voters and receives votes at elections within the meaning of the constitutional provision. There can be no doubt that the word " polls " has had a well-defined and understood meaning. It is the place to which voters go to cast their ballots. But the spirit of the Constitution reaches out and embraces within its scope situations within its purview although without its letter. *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50, where (at p. 55) it is said: " A written Constitution must be interpreted and effect given to it as the paramount law of the land, equally obligatory upon the legislature as upon other departments of government and individual citizens, according to its spirit and the intent of its framers, as indicated by its terms. An act violating the true intent and meaning of the instrument, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. A thing within the intent of a Constitution or statutory enactment is, for all purposes, to be regarded as within the words and terms of the law. A written Constitution would be of little avail as a practical and useful restraint upon the different departments of government, if a literal reading only was to be given it, to the exclusion of all necessary implication, and the clear intent ignored, and slight evasions or acts, palpably in evasion of its spirit, should be sustained as not repugnant to it. The restraints of the Constitution upon the several departments, among which the various powers of government are distributed, cannot be lessened or diminished by inference and implication; and usurpations of power, or the exercise of power in disregard of the express provision or plain intent of the instrument, as necessarily implied from all its terms, cannot be sustained under the pretence of a liberal or enlightened interpretation, or in deference to the judgment of the legislature, or some supposed necessity, the result of a changed condition of affairs."

The purpose of this constitutional provision was to furnish a method of preventing corruption at the polls. While corruption is more often suspected and charged than found, it, nevertheless, does sometimes exist. It was to minimize its possibility that the fundamental law of the state sought to excite a watchfulness, created out of party prejudice, which would be a safeguard against wrongdoing. Whether or not it accomplishes the purpose is not the question. The sovereign power has declared it essential. At the general election November 4, 1919, an amendment to the Constitution was adopted which permitted absentee voting. Pursuant to this amendment the legislature enacted chapter 875, Laws of 1920, which has been re-enacted into chapter 588, Laws of 1922 (Election Law), sections 117, 122 and 90. By section 117 it is provided that a qualified voter who is absent from the county of his residence because his duties, business or occupation require him to be elsewhere, may vote as an absentee voter. He is required to file an affidavit not later than the seventeenth day before the general election, stating his name and residence address; that he is a qualified voter of the election district in which he resides; that he expects, in good faith, to be unavoidably absent because of certain duties, etc., giving a brief description of the duties, etc., which require his absence; the special circumstances by which such absence is required, etc., and that he applies in good faith for the absentee's ballot or ballots. Under section 118 upon receipt of such affidavit the board of elections " *shall determine*, upon such inquiry as it deems proper whether the applicant is a voter legally qualified to vote at such election, and if it finds he is not so qualified shall *reject* the application." It is further provided by section 118, if the board shall *find* the applicant is a qualified voter and that his affidavit is sufficient, " it shall, as soon as practicable after it shall have determined his right thereto, deliver to him, at the office of the board, or if he shall have so requested to a member of his family, or if he shall have so requested shall mail to him at an address in the United States designated by him, an absentee voter's ballot or set of ballots, and an envelope therefor." The law provides specifically certain details with reference to the form of the ballot and then provides by section 120 that the board shall furnish with each absentee voter's ballot an envelope. After marking his ballot as provided by law the absentee voter is required to place the ballot in an envelope and take and subscribe a certain oath which, according to the law, he is required to take and which is set forth on the reverse side of the envelope. The envelope, sealed, containing the ballot is then mailed or delivered to the board of elections of the county or city of his residence.

Provision is also made for the delivery of these ballots by the board of elections to the town or city clerks except in the cities of New York and Buffalo and by the town or city clerk to the respective election districts where the absentee voters reside and are entitled to vote. § 90. Under section 39 of the Election Law, as amended, the county clerk will perform these duties.

Having in mind the purpose of the constitutional direction as to the distribution of ballots to voters at the polls, it seems to me that the distribution of ballots to absentee voters is surely within the purview of the constitutional provision. While it is true that this distribution is not made at the polls, as that term is generally used, it does not do any violence to the use of that term to include within its scope the distribution to voters of the ballots wherever or however it may take place when the distribution is made to enable them to cast the ballots so distributed. In *Matter of Metz* v. *Maddox*, 189 N. Y. 460, a recount or recanvass by a justice of the Supreme Court of votes cast at a general election was held to be a violation of article II, section 6, of the Constitution. Surely such recount would not be a " counting of votes at elections," yet it was held to be within the spirit of those words. In receiving the sealed envelope from the voter the election official does not, in my opinion, receive it in the sense that he receives it on election day. He does not touch the ballot. He receives it and delivers it sealed. He is merely a depositary who does not touch the ballot itself.

To the extent that the act in effect abolishes the office of commissioners of election and thus permits the distribution of ballots at the polls to absentee voters it is void. The applicant continues in his office, at least, for the purpose of distributing the ballots to absentee voters. Motion granted. No costs.

Ordered accordingly.